(75 South. 212)

No. 22136

NELSON et ux. v. VICKSBURG, S. & P. RY. CO.

(April 16, 1917. Rehearing Denied May 14, 1917.)

*(Syllabus by the Court.)*

CARRIERS ☞303(1), 320(26) — DAMAGES ☞132(6) — CARRIAGE OF PASSENGERS — NEGLIGENCE — QUESTION FOR JURY — EXCESSIVE DAMAGES.

The sounding of the usual whistle for a station and the usual announcement of the station by some member of the crew constitute an invitation to the passengers to alight at the next stop; and where on a dark night a crowded excursion train, after such signal and announcement, came to a stop, and several passengers got off before discovering that the train had stopped short of the station, and the plaintiff, an elderly lady, was on the bottom step about to alight, when the train, without warning, moved forward, and the plaintiff, clinging to the handrail of the steps, was carried some 15 to 20 feet,

and then fell, or was thrown, on a trestle, and thereby permanently injured, *held*, that the question of the railroad's negligence was one primarily for the jury, and that a verdict in favor of the plaintiff, made a cripple and sufferer for life, for $15,000, not being clearly erroneous or excessive, would be affirmed.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1224, 1244, 1322; Damages, Cent. Dig. § 377.]

Appeal from First Judicial District Court, Parish of Caddo; R. D. Webb, Judge.

Action by Augustus G. Nelson and wife against the Vicksburg, Shreveport & Pacific Railway Company. Verdict and judgment for plaintiffs, and defendant appeals. Affirmed.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant. James G. Palmer, of Shreveport, for appellees.

LAND, J. This is a suit to recover $50,000 for alleged permanent injuries sustained by Mrs. Nelson while attempting to step off one of defendant's passenger trains on a dark night, at Haughton, a way station a short distance east of the city of Shreveport.

The petition represents, in substance, that on November 3, 1915, Mrs. Nelson and other residents of the village of Haughton purchased excursion tickets to the city of Shreveport for the purpose of visiting the state fair, and that they were returning therefrom at night when the accident happened to Mrs. Nelson at the end of a switch, several hundred yards west of the station at Haughton.

The petition alleges that as the excursion train neared Haughton, the usual station signal was blown, and the porter, acting as flagman, called out "Haughton" as the next stop; that, after running a short distance, the train came to a complete stop, and Mrs. Nelson, having been led by said signal and call to believe that the train had stopped at the regular station, proceeded, with several other passengers, to get off; that three of said passengers actually alighted from said train before discovering that the village of Haughton had not been reached, and that one

of them fell down a considerable embankment, whereupon he called to the other passengers not to get off the train, as the station had not been reached; that when Mrs. Nelson heard the call she was upon the last step of the car and in the very act of stepping off, and at once grasped the hand bars and clung to them, until by the sudden forward movement of the train her hold was broken and she ,was hurled with great force from said steps onto a trestle, thereby causing her serious, painful, and permanent injuries.

The petition alleges that Mrs. Nelson's left thigh was broken, "which consisted of a fracture of the neck of the femur, which was impacted and toe everted," causing a shortening of the limb; that she also sustained the further injury of a contusion of the soft parts in the region of the sacrum, which broke down later and became a suppurating sore, and also suffered serious and permanent injuries as a result of said fall, the extent of which was then unknown to the plaintiff.

The petition further alleges that Mrs. Nelson, as a result of said injuries, is an invalid, and will so remain the remainder of her days; that her left leg is considerably shorter; that she is unable to walk, and has to use an invalid's chair, and that she believes that she will never be able to ,walk; that her life will be materially shortened; and that she will be a constant sufferer the balance of her days.

The petition further alleges that Mrs. Nelson for many weeks after receiving said injuries suffered, and continues to suffer, most excruciating physical pain and mental anguish, which she believes will continue the remainder of her days.

Plaintiff itemizes her damages as follows:

Sanitarium and medical expenses... $     500.00
Permanent personal injuries, etc. ...   25,000.00
Pain and suffering, mental and physical  ........................  25,000.00

The answer admits that Mrs. Nelson was a passenger, and that she jumped or fell off the train .and received some injury, at or near the west end of the switch, through her own negligence in not observing that the train had not reached the station at Haughton.

The defense is set forth in following extracts from the answer:

"Respondent avers that as the train was approaching Haughton the usual announcement was made in the coaches by its flagman that the next station was Haughton; that petitioner, preparing to leave the train, left her seat and proceeded out to the platform, and could have and should have seen that the train had not quite reached the station house and platform at Haughton, and in addition to her own senses was warned that the train was not yet at that station, and before she descended from the train —the train itself having stopped momentarily to permit the closing of the switch and started slowly forward—petitioner was before and after the train started warned by several persons not to attempt to alight from the train; and plaintiff could before she fell or jumped off plainly see and realize that the train was in motion, but persisted, in spite of the warning given her and the evidence of her own senses to attempt to get off or leave said train while in motion, and fell or jumped from said train through her own negligence, and not the negligence of your respondent, and her injuries were caused by her own acts which were the proximate cause of the same."

Defendant, further answering, pleaded in the alternative contributory negligence on the part of the plaintiff.

The cause was tried before a jury, which, by a vote of 10 to 2, found a verdict for $15,000 in favor of the plaintiff. From a judgment pursuant to the verdict, the defendant has appealed.

Mrs. Nelson testified that after the signal and call for a stop at Haughton had been given, and the train had come practically to a stop, her party of four proceeded to get off, she bringing up the rear, and that after Mr. Harris and her daughter had alighted, and she was on the step fixing to step off, Mr. Harris called and told her not to get off, and that she thereupon caught the rail and tried to hold on the train, which by that time was going so fast that she had a hard time holding; that she held on as long as she could, until the car gave a lurch which threw her

from the train. Mrs. Nelson further testified that it was too dark for her to see where she was.

Mr. Harris testified that, after the usual signal whistle was blown, and calls for Haughton were given, he and his wife and Mrs. Nelson's daughter proceeded to the platform and got off the train, which had come to a full stop; that it was too dark for the witness to see the surroundings, but found himself going down an embankment, and turned and saw that he was at the wrong place, some distance from the station, and called out "to the rest of them not to get off," and by that time the train had just started, and the witness saw that his wife and the little Nelson girl were off, but did not know whether Mrs. Nelson was off or not; could see a bulk back there, but could not realize what it was; found Mrs. Wilson lying under the abutment of the trestle some 15 or 20 feet away. The same witness further testified that the distance between the place of the accident and the station is from 600 to 700 yards.

Mrs. Wilson testified that when she got off the train she rolled down an embankment, and it was too dark for her to see what happened to Mrs. Nelson.

Azalee Wilson, 13 years old, a passenger on the train, testified that after the train started again she saw Mrs. Nelson hanging onto the handrails of the steps.

The claim agent of the defendant had procured from the above-named witnesses statements which differed in some material respects from their testimony as given before the jury.

Mr. M. E. Palmer, farmer, of Claiborne parish, testified that he was a passenger of the train in question, and had known Mrs. Nelson, and Mr. and Mrs. O. P. Harris all his life, and was related to Mrs. Harris.

Mr. Palmer stated that, after the usual and customary signals and calls were given for a stop at Haughton, the train made a stop; that thereupon the passengers for Haughton left their seats and went out on the platform for the purpose of getting off; that Mr. Harris alighted first, Lillian Nelson next, and Mrs. Harris last; and that, when Mrs. Nelson started to get off, the train started.

Mr. Palmer testified that at this juncture he was standing on the bottom step of the next platform within a few feet of Mrs. Nelson, and described what happened as follows:

"Well, she was in the act of stepping off on the ground, and when the train started, she tried to hold. Just then the train gave a lurch and jerked her feet loose, and she held on for some time with her hands. I said 'You cannot get off; hold and I will try to catch you, and hold you on.' Just then the train gave another sudden lurch and she fell off. I came near falling myself, and the last thing I saw of her she was lying with her face to the ground."

The same witness testified that the engine was pulling 17 crowded passenger coaches filled with passengers returning from the state fair at the city of Shreveport.

The engineer and fireman testified that the regular stop signal for Haughton was blown. The colored porter testified that he called out "Haughton" several times in the colored coaches. The flagman whose duty was to make a similar call in the white coaches was not put on the stand, and neither was the conductor. There is testimony that "Haughton" was called in the white coaches.

The engineer, fireman, and colored porter testified that the stop at the end of the switch was but for a moment or for a second or two.

The claim agent testified that he had correctly taken down the statements which he produced in open court, and there was considerable conflict of testimony between him and the witnesses on this subject.

Contradictory statements may affect the credibility of a witness, but, of course, do not prove the truth of such statements.

The witness Barnette, for the plaintiff, testified that he was in the same coach with Mr. and Mrs. Harris, Mrs. Nelson and daughter, and M. E. Palmer, and that soon after a man with a lantern passed through calling "Haughton," the train stopped, and the said parties went out on the platform, and in about a minute the train started with a sudden jerk, which nearly knocked him off his feet.

There is other testimony that "Haughton" was called, that the train stopped for an appreciable time, and that several passengers went on the platform to alight from the train.

The credit to be attached to the testimony of the witnesses was a matter for the jury.

The jury evidently found from all the facts and circumstances of the case that Mrs. Nelson and other passengers were led to believe by reason of the usual stop signals and calls that the next stop would be at Haughton, and, when the next stop was made, naturally proceeded to leave the train.

The strength of this belief is shown by the fact that Mr. Harris and his wife and Mrs. Nelson's daughter alighted from the coach in the darkness, confidently expecting to step upon the platform at the station.

Mrs. Nelson must have been impressed with the same belief, as she was on the step about to alight, when the train suddenly started forward.

That Mrs. Nelson did not jump off the train while the train was in motion is negatived by the direct and positive testimony of M. E. Palmer, an unimpeached witness.

And, despite contradictory statements, the jury were at liberty to believe Mrs. Nelson's testimony that she did not jump off, but clung to the handrails of the steps as long as possible, and the testimony of Miss Harris that she saw Mrs. Nelson clinging to the handrails. The fact that Mrs. Nelson was carried by the train to the trestle, some 15

141 LA.—16

or 20 feet distant, tends to support the inference that she did not jump off, but clung to the handrails as long as she could.

The question whether the defendant company was negligent in not warning the passengers that a stop would be made at the west end of the switch was one primarily for the jury.

The usual signal and calls for Haughton as the next stop and the slowing down and stop of the train long enough to enable a man, woman, and girl to get off were amply sufficient to induce the plaintiff and her fellow passengers to believe that the train had arrived at the station.

The darkness of the night prevented them from seeing that the train had stopped more than a quarter of a mile short of the station.

The conductor and rear flagman were not called as witnesses for the defendant, nor was their absence accounted for. The presumption is that their testimony would not have been favorable to the defense.

It seems to us that, under all the facts and circumstances of the case, the conductor should have foreseen that passengers for Haughton would in all probability attempt to get off the train at its first stop after the whistle was blown and "Haughton" was called, and should have taken proper steps to prevent them from so doing.

Under the circumstances the stop was an invitation to Mrs. Nelson and other passengers to leave the train. In a similar case this court said:

"We are of the opinion that the jury were correct in finding the defendant corporation negligent in moving its train when Mrs. Odom was on the car step in the act of leaving the train. She was placed in a situation by the company where she had no time for deliberation and had to choose between two modes of escape, both of which were dangerous." Odom v. Railroad Co., 45 La. Ann. 1204, 14 South. 736, 23 L. R. A. 152.

In the same case the court also said:

"It is immaterial whether she jumped off or was thrown off if she was in the act of leaving the

car when it had stopped, and the train moved ahead when she was in the act of getting off." 45 La. Ann. 1203, 14 South. 735, 23 L. R. A. 152.

In another case the court used the following language:

"Called to the platform and to the steps of the car, for that is the significance of the whistle, and the announcement of the station by the train official. * * *" Brashear v. Railroad Co., 47 La. Ann. 739, 17 South. 261, 28 L. R. A. 811, 49 Am. St. Rep. 382.

The medical testimony shows that the plaintiff sustained a fracture of the left hip joint at the neck, that is, "the lower end of the bone was driven into the marrow of the upper end," causing the limb to be shortened, and the foot everted or turned outward at an angle of about 70 degrees, and that she received minor contusions.

At the date of the trial below the plaintiff was unable to walk without crutches, and the surgeons were of opinion that she would never be able to walk without artificial support.

Dr. Willis, the brother of the plaintiff, and also one of the surgeons of the defendant company, testified that the injury to the hip was permanent, and that the plaintiff would never be able to move about without more or less pain. Another surgeon testified to the same effect.

The average allowance for the loss of a leg in the more recent cases has been about $7,500, including pain and suffering.

But plaintiff on the trial testified that she was in constant pain, and the medical evidence is to the effect that she will never be able to move about without pain.

If, as the evidence tends to show, the plaintiff is not only a cripple for life, but never will be able to move about without pain, we are not prepared to say that the verdict is manifestly excessive.

Judgment affirmed.

SOMMERVILLE, J., takes no part.