## CAMPBELL v. UNITED STATES.
### Civil Action No. 437.

District Court, E. D. Louisiana,
Baton Rouge Division.
Jan. 9, 1948.

L. W. Brooks and Taylor, Porter, Brooks & Fuller, all of Baton Rouge, La., for plaintiff.

A. L. Ponder, Jr., Asst. U. S. Atty. of New Orleans, La., for defendant.

182

PORTERIE, District Judge.

Mrs. Evelyn Campbell, a widow, filed the captioned action under the Federal Tort Claims Act, 28 U.S.C.A. § 921 et seq., to recover from the United States Government the sum of $40,982.80, being $30,000 for her personal injuries, permanent disability, resulting pain and suffering and mental anguish, and $10,982.80 for her medical expenses ($1,963.70 incurred, $500 estimated), and estimated future nursing expenses for the rest of her life. She alleges in her complaint that on April 27, 1946 at approximately 10:30 P.M., while standing near the edge of the sidewalk on the north side of Convention Street between First and Lafayette Streets near the south entrance to the Heidelberg Hotel in the City of Baton Rouge, she was negligently run into and knocked down by a sailor who was being transported from the State of California to the City of New Orleans, or some point East under Government orders.

Mrs. Campbell, who was 63 years old when she filed suit, suffered injuries as will be set out in our findings of fact.

Findings of Fact.

1. Mrs. Campbell was seriously injured on April 27, 1946, about 10:30 P. M., when she was run into and knocked down by one of a group of sailors.

2. At the time, Mrs. Campbell was standing on the north side of Convention Street near Lafayette Street in Baton Rouge, Louisiana, about two or three feet from the south edge of the sidewalk and near the curb of the paved street. She was one of a group of five persons, namely, Mrs. Campbell, her daughter, Ruth Campbell, Emmett Webb, Harold M. Quinlivan and G. S. Stall, who were conversing on the sidewalk, near the street; the first three named had just finished dining at the Heidelberg Hotel, which is located on the northwest corner of Convention and Lafayette Streets in Baton Rouge, immediately by and at the very place of the accident.

3. There was a clear space of approximately eight or ten feet between this group and the south wall of the Hotel building for pedestrians to pass on the sidewalk.

4. The identity of the sailor who struck and knocked down Mrs. Campbell was not established but he was one of two groups of sailors consisting of 360 and 141 enlisted men being transported by train from points in the State of California to the City of New Orleans and points East under Government orders WMB 77661 and WMB 77722. The train stopped in Baton Rouge from about 9:30 to 10:30 P. M. on April 27, 1946 to be iced and serviced.

5. The sailor who struck and knocked down the plaintiff was dressed at the time in the regulation uniform of an enlisted man. He was traveling under one of the aforesaid orders and was under the command of either Lt. J. G. David, M. Hysinger or Ensign Clifford A. Hemmerling.

6. At the time of the accident this sailor and a number of others were running together, somewhat in a bunch, to catch the very slowly-moving, departing train, in sight one block away.

7. As a direct and consequential result of the accident, Mrs. Campbell suffered personal injuries consisting principally of (a) a comminuted fracture of the lower end of the right radius involving the wrist joint, (b) a complete fracture of the neck of the right hip and (c) bruises and contusions. The fracture of the right radius united with marked deformity, which is permanent, and has left her right hand functionally impaired for the rest of her life. The fracture of the hip was reduced by traction and a Smith-Peterson nail was inserted by the surgeon, Dr. McHugh, in the bone to keep the fragments in position. There is now some absorption of the head and neck of the femur with questionable union of the fracture. Mrs. Campbell walks with a limp, using a crutch or stick for support. Her right knee and right ankle still swell. The chances of more improvement of her hip condition are about even, and it will be about four years before it will be known definitely whether or not this condition will further improve. She suffered excruciating pain for awhile following the accident and was in fear that she would not survive her injuries. After surgery, her pain became less severe, but she still suffers pain, though not continuously.

8. Her known expenses from the date of the accident to and including February 28, 1947, amount to $1,963.70.

After the filing of suit, she incurred additional medical expenses in the sum of $36.

In addition to the foregoing, Mrs. Campbell must undergo periodical examinations by Dr. McHugh and X-ray examinations of her hip by a radiologist.

She must have an attendant with her constantly at an estimated cost of $2 per day for a period of 11.67 years from February 28, 1947. This will cost her $8519.10, assuming (which we have, although perhaps improperly, in view of the progressively increasing cost of domestic servants) that there will be no further increase in the cost of domestic help. Adding these items together gives a grand total of $10,518.80.

The plaintiff has also asked for $500 to cover future medical expenses which will be substantial, in view of the fact that she must undergo periodical physical and X-ray examinations.

### Conclusions of Law.

■ 1. The evidence shows that the serious and permanent injuries suffered by Mrs. Campbell and her losses and expenses were caused solely by the gross negligence and carelessness of a sailor traveling under Government orders.

■ 2. The evidence shows also that the sailor, guilty of the aforesaid tort, was "acting in line of duty" at the time he committed the same and the United States of America is liable therefor. 28 U.S.C.A. § 931 (a) and § 941 (c).

### Discussion.

Counsel for the Government makes much of the point that the service men involved here were not in direct control of any of their officers—as to say, that there was no squad, platoon, or company, in formation, in charge of a sergeant, a lieutenant, or a captain, respectively, when the injury was inflicted; that in the instant circumstances the tort liability of the sovereign does not arise.

The men, from the circumstances, had at least the tacit approval or implied permission of their officers to leave the train being serviced at the Baton Rouge station. They wanted relaxation and, also, to go to eating and refreshment spots nearby—within a city block. The slowness with which the train left Baton Rouge to go to New Orleans showed that its operators knew that many of the men had gone to town and needed a chance to get back on. From the record we infer that none was left behind; the very slowly leaving train got all of them.

Furthermore, these men running to the Government-chartered train were obeying orders of their Government to go to New Orleans; they were not running to catch a train taking them to an amusement spot or a baseball park for their own individual and discretionary pleasure.

There we believe, is the dividing line in the interpretation of the qualification "acting in line of duty".

We have not given value to the cases where the claimant in a tort case is a member of the armed forces. In these there is very liberal interpretation. See Moore v. United States, 48 Ct.Cl. 110. We realize that here third-party liability is sought to be established against the Government for the tort of one of its fighters and that the interpretation of what is "acting in line of duty" should be reasonably strict—but yet not so strict as to make the Act practically inapplicable and, consequently, meaningless.

### Quantum.

Mrs. Campbell, a widow, was in good health before this accident. She is now practically helpless for the rest of her life. She has lost the physical ability to perform the duties of a homemaker, such as cooking, washing, ironing, etc.

■■ We should be guided by the decisions of the Supreme Court of Louisiana. Exactly similar cases are generally not found; but the following four cases, involving injuries approaching those of the instant case and considering that Mrs. Campbell is already 63 years of age and, consequently, at law, with relatively short expectancy of life, will support the allowance of the amount of $10,000 for the body injuries, pain, suffering etc., of the plaintiff. Oliphant v. Town of Lake Providence, La.App., 1939, 193 So. 516; Stough v. Young, La.App., 1938, 185 So. 476; Hamilton v. Lee, La.App., 1932, 144 So. 249; Nelson v. Vicksburg, S. & P. Railway Co., 1917, 141 La. 475, 75 So. 212. These cases indicate the allowance of $15,000; but the

persons hurt are younger than the instant plaintiff; and we remember that we are allowing a substantial amount for "future nursing or attendant's expenses." This latter amount, Item 8 of Findings of Fact, is $11,018.80 ($10,518 plus $500).

Judgment in the total of $21,018.80 will be signed accordingly.