135 So.2d 368 (1961)
Thomas MALVEAUX et al., Plaintiffs-Appellants,
v.
George W. BULLER, Defendant-Appellee.
No. 365.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1961.
C. Kenneth Deshotel, Opelousas, for plaintiffs-applicants-appellants.
Felix A. DeJean, Jr., Leon S. Haas, Jr., Opelousas, for defendant-opponent-appellee.
Before FRUGÉ, SAVOY and CULPEPPER, JJ.
FRUGÉ, Judge.
This is a civil action brought by the father and mother of a young colored boy, Patrick Malveaux, as a result of his death in an automobile accident; named as defendant is George Buller, individually, who was at the time of the accident a member of the Fifth Police Jury Ward of the St. Landry Parish Police Jury. The District Judge dismissed plaintiffs' suit after trial on the merits; from the judgment so rendered, the plaintiffs have appealed.
The facts disclose that this accident happened in the broad daylight on May 13, 1959. It appears that sometime prior to the accident the decedent Patrick Malveaux and Herbert Pellican were riding around Opelousas, Louisiana, when they met two *369 young colored girls, namely Mary Lee Tyler and Lena Rose Esprit. It further appears from the testimony that they were merely "riding around" and decided to go see a certain corn patch and then a swimming hole located some distance in the woods. Patrick Malveaux was driving the vehicle involved in the accident and Lena Rose Esprit was sitting in the right front. In the rear, were seated Mary Lee Tyler, on the left behind the driver, and Herbert was sitting on her right. Shortly before the fatal accident the decedent actually drove over this country road and bridge in question, and it was on his return after "viewing the crops" when the unfortunate accident occurred.
The plaintiffs contend that the sole and proximate cause of the accident was the muddy condition of the road and the fact that a portion of the wood railing on the south side of the bridge was in poor condition or was totally missing. They allege that after the Malveaux automobile reached a mud puddle just west of the bridge, it commenced skidding; the car then got upon the bridge and went half way over the bridge, when it slid off the south side and turned over in the center of the stream below the bridge.
The defendant on the other hand contends that the sole and proximate cause of the accident and resulting damages was the negligence of said Patrick Malveaux, which negligence consisted principally but not exclusively of the following acts or omissions of Malveaux: that Malveaux failed to have his vehicle under control under the existing circumstances; that Malveaux was aware of the road conditions and failed to use means of alertness or precautions to avoid the accident; that Malveaux was traveling at an excessive rate of speed immediately prior to and at the time of the accident; that Malveaux had lived in the area for a number of years and had traveled the road in question and knew or should have known the conditions prevailing at the time and nevertheless ignored or disregarded such conditions; and that Malveaux failed to keep a proper lookout and see that which he should have seen and act prudently under such conditions existing.
The record indicates that the road in question was a rather remote country dirt road. The wooden bridge was in relatively safe condition, but was of the old fashion variety which is often found in the "country parishes" of the state.
There were two wooden "runners" on which vehicles drove over, and on each side of the bridge were wooden balustrades or railings. It appears that these railings were not strong enough to stop a car from going over the side of the bridge, but were placed there merely to serve as a guide for automobiles and buggies negotiating the bridge. After heavy rains this dirt road was known to become muddy in certain places. (After considering its remote location and the purpose for which it was intended, we find there was nothing unusually dangerous about the bridge or the road when used by traffic moving at a moderate rate of speed.)
The plaintiff subpoenaed the three living occupants of the car, and who were actually the only eye witnesses to the accident, but placed on the witness stand only Mary Lee Tyler, who admitted that actually she was "tousling" with her boy friend over a book shortly prior to and at the time of the accident and did not observe "too much" as to what was going on. On direct examination (Tr. 210) Mary Lee Tyler testified as follows:
"Q. Going over the bridge the first time, how fast were you driving? A. We wasn't going fast at all. We wasn't going 35. We were going real slow the first time to go across the bridge.
"Q. Did you have any trouble going over the bridge the first time? A. No, sir, he was driving his car real *370 slow for he saw the bridge was bad, after he saw the bridge was bad he went real slow across the bridge."
Now, by plaintiffs' only eye witness to the accident who was an occupant in the car, the testimony clearly shows that the driver, Malveaux, had shortly before the accident observed the "condition" of the road and bridge. We are of the opinion that had Malveaux, on his return trip over the same road and bridge in question some thirty minutes later, crossed the bridge in the same manner and moderate rate of speed that he used previously, he certainly would not have lost control of his automobile and this unfortunate accident would not have occurred.
In Millstead v. City of New Orleans, La. App., 146 So. 492, 493, involving a situation similar to the instant case, the court stated:
"The evidence shows that the street on which the accident occurred was in a more or less rough and uneven condition, and that it would be almost impossible for an automobile driver to operate over it at a speed in excess of ten, or possibly fifteen, miles per hour. But a municipality is not negligent merely because it fails to furnish an asphalt or concrete surface to those desiring to use its streets. It need only provide roadways reasonably safe for automobile traffic.
"In Ruling Case Law, vol. 13, § 289, p. 351, we find:
"`A municipal or quasi municipal corporation is not responsible for every accident that may occur on its streets or highways, nor is it a guarantor of the safety of travelers thereon or an insurer against all injury which may result from obstructions or defects therein. Nor does it warrant that its streets shall be free from obstructions or defects or that they will be absolutely perfect and safe at all times.'

* * * * * *
"The fact that there were many other holes and depressions should have caused the driver of the car in which plaintiff was riding to moderate its speed. Of course, had she been on a paved highway on the surface of which no other depressions were manifest and had she, while driving at a speed justified by the apparent condition of the roadway, been confronted with an unexpected hole of the size of that involved here, the municipality would, no doubt have been liable, assuming that it had knowledge or constructive knowledge of the defect. But in a roadway, such as plaintiff was traversing, and in which there were, as we have said, many other depressions similar to that which is here pointed out, the condition of the whole street was apparent and a speed consistent therewith should not have been exceeded. It thus follows that though fast speed was impossible, a reasonable rate of progress could have been maintained with safety. The municipality is not liable."
In Rohr v. New Orleans Gas & Light Co., 136 La. 546, 67 So. 361, 364, our Supreme Court stated:
"To recover damages for injuries sustained through the alleged fault of another, the fault, and the connection between the fault and the injuries, must be shown, with reasonable certainty. There can be no recovery where only the possibility, or the probability, of such fault and connection is shown. The evidence herein fails to make the case alleged against the defendant reasonably certain, and plaintiff cannot recover."
This court cannot help but wonder why the two surviving passengers, who were guests of the driver and friends of said decedent and his family, were subpoenaed by plaintiff, but were not called on by plaintiff to testify; the witness Lena Esprit, who was seated on the front seat of the *371 automobile, was probably in the best position to know just how the accident occurred. In the Succession of Yeates, 213 La. 541, 35 So.2d 210, 215, Chief Justice Fournet as organ for the Supreme Court stated:
"We think particularly applicable here the rule enunciated in the case of Bates v. Blitz, 205 La. 536, 17 So.2d 816, that a person failing to call available witnesses possessing peculiar knowledge of facts that are essential to the proof of the case, or to produce more explicit, direct, and satisfactory concrete evidence than that relied on although able to, raises the inference or presumption that the testimony of the absent witnesses would not sustain his contentions and that the concrete evidence, if produced, would prove detrimental to his cause, particularly when the testimony of the person attempting to establish his case has been put in doubt but is susceptible of corroboration. See, also, King v. Atkins, 33 La. Ann. 1057; Crescent City Ice Co. v. Ermann, 36 La.Ann. 841; Pruyn v. Young, 51 La.Ann. 320, 25 So. 125; Nelson v. Vicksburg, S. & P. R. Co., 141 La. 475, 75 So. 212; Rubenstein v. Files, 146 La. 727, 84 So. 33; Toca v. Rojas, 152 La. 317, 93 So. 108; Succession of Rageur, 155 La. 97, 98 So. 853; Perez v. Meraux, 201 La. 498, 9 So.2d 662; Stanley v. Jones, 201 La. 549, 9 So.2d 678; II Wigmore on Evidence (2rd Ed.) 162, Sections 285 and 286; 22 C.J. 115, Section 56; 31 C.J.S. Evidence § 156, subsec. c, p. 856; 20 Am.Jur. 192, Section 187; and Ann. Cas.1914A, 915."
Therefore it is not necessary for us to consider plaintiffs' contention that the St. Landry Parish Police Jury was not operating under the unit system as contemplated by law, since the deceased was guilty of contributory negligence, proximately causing the accident, thus barring plaintiffs' recovery.
After considering all of the testimony and evidence we are of the opinion that there was no error in the trial court's decision.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.