This is a suit by a tenant against her landlord and his insurance carrier for damages for physical injuries alleged to have been caused by a defect in the leased premises. Bertha Bates is the plaintiff and Rubin Blitz and the Standard Accident Insurance Company are the defendants. During the pendency of the suit below, Rubin Blitz died and his executor, Alfred D. Danziger, was substituted as party defendant.
The allegations of plaintiff's petition are that on April 19th, 1939, and for some time prior thereto, she had been a tenant of Mr. Rubin Blitz, occupying a room of the premises No. 2605 Washington Avenue, this City, owned by him. On that date about 3:30 o'clock p.m. while on her way to her room and in the act of crossing a wooden platform, situated in front of another room adjoining hers, she stepped on a loose board which flew up and struck her in the face causing her to fall and break her arm.
The defendants deny that the accident happened. They also assert that the wooden platform, which is said to have caused the accident, was not furnished by the landlord or under his authority, nor did it belong to him. Moreover, say defendants, it was a movable platform unattached and forming no part of the leased premises and, consequently, the landlord was under no obligation to maintain or keep it in repair.
There was judgment below in favor of defendants dismissing plaintiff's suit and she has appealed.
The accident is said to have occurred in the dirt yard of a negro tenement house, which consists of a number of one room apartments, some of which were on the ground floor and some above. Bertha Bates occupied room No. 6, which is on the ground floor and the wooden platform, which is alleged to have caused her fall, was before the door of another tenant, who occupied No. 5, the adjoining room. These platforms were placed in front of the steps leading into the rooms on the ground floor because the yard was unpaved and after a rain storm puddles of water would accumulate and remain in front of the entrances to the rooms for some time. There is considerable testimony on the point of whether they were nailed to the steps in front of each room, several witnesses asserting that they were and others that they were not, but we deem it unimportant to determine this question because whether they were nailed or not, they were a convenient and necessary adjunct of the leased premises.
There is no doubt that the accident happened if the overwhelming evidence in the record is to be believed. Three eye-witnesses testified in addition to Bertha Bates and Robert Prevost, her paramour, referred to in the record as her "common-in-law" husband, who either saw plaintiff fall or assisted in picking her up just after her fall. The eye-witnesses were Henderson Wright, Robert Lawrence and Emma Hines. In addition to this evidence Dr. Battalora testified that plaintiff sustained a broken arm and consulted him for treatment on the first of May, about eleven days after the accident.
We have stated that the platform which caused Bertha Bates to fall was not in front of her door, but that of a neighbor, and there is some evidence in the record that there was another way for plaintiff to reach her room, but it seems to us from the photographs which are in evidence, that the most direct way for her to get there was by crossing this platform. The other way involved a passage through a covered way just about high enough to permit her reaching her room. Moreover, she was at liberty to use either way of reaching her apartment. Ruling Case Law, Permanent Supplement, Vol. 6, Par. 568, p. 4184; Estes v. Ætna Casualty Surety Co., La.App., 157 So. 395.
The following cases cited by counsel are in point.
Glain v. Sparandeo, 119 La. 339, 44 So. 120, 121, where the court said:
"The lessor, we think, is as much bound for the safety, for ordinary use, of the necessary approaches, and exits to and from the apartments which he lets as for the safety of the apartments which he lets as for the safety of the apartments themselves. The exceptions of no cause of action was therefore properly overruled."
Mosher v. Burglass, La.App., 170 So. 416, 418, from which we quote:
"There is, then, liability for such injury as Mrs. Mosher actually sustained, because the law of this state which makes an owner or landlord liable makes no distinction between those portions of the property of which the tenant has exclusive use and *Page 518 
those portions which are available to be used jointly with other tenants or occupants. In fact, if there is any distinction, the liability should be more certain where injury results from defects in those portions which are reserved for the common use of all the tenants than where the injury results from defects in those portions of which the tenant has the exclusive use. We discussed this question in Caulfield v. Saba, La.App., 144 So. 907, and, after referring to many cases, cited the following language used by the Supreme Court in Glain v. Sparandeo, supra: `The lessor, we think, is as much bound for the safety, for ordinary use, of the necessary approaches and exits to and from the apartments which he lets as for the safety of the apartments themselves.'"
Estes v. Ætna Casualty Company, supra [157 So. 398], where this Court went extensively into the law. There we said:
"We have already shown that the lessor's obligation in this state results from R.C.C. art. 2695. This Article is practically identical with article 1721 of the Code Civil Francais (Code Napoleon), and therefore the comments thereon by the French commentators will be of help to us in determining whether the obligation extends to such parts of the property as are provided for the joint use of all tenants. We find, in Contrat de Louage, Vol. 20, p. 229, a discussion by Baudry-Lacantinerie of this question, and we note with interest the following statement of the law as translated in the brief of appellant:
"`The enjoyment must be guaranteed to the tenant, not only of his apartment itself, but also of the accessories, such as the entrance, the janitor's lodge, the courtyard, the stairways, the cellars, the water wells.
"`The tenant, having the right to use not only the principal thing, but also the accessories, his enjoyment must be guaranteed of the latter as well as of the principal thing.
"`Among the accessories must be included the common parts of the property, those of which the tenant has the enjoyment with other tenants. We can mention:
"`The Courtyard. The landlord cannot prevent the tenant of an apartment from going over the courtyard of the people of the house, at whatever hour. Moreover, he cannot prevent the tenant from bringing into the common courtyard the carriages of his guests or his own, at whatever hour. Nor can he divide the common courtyard by a fence. He is bound to keep up the common courtyard. He cannot erect any construction there. He cannot prevent the tenant from unloading his goods there, if the courtyard has that destination.'"
Here the premises were used as a negro tenement with a common yard and while the evidence does not indicate that the landlord built all of the platforms, it does show that at least two of them were built by his agent, one Nelson Dokes, who occupied one of the rooms, rent free, and collected rents from the other tenants. But whether they were built by the landlord or not they were necessary in view of the fact that there were no gutter spouts on the roof and the water ran into the muddy yard. It appears also that the landlord knew that the platforms were used for that purpose.
Plaintiff suffered a fracture of the upper third of the left humerus together with contusions and brush burns. According to the evidence, she incurred a hospital bill of $87.50 and Dr. Battalora charged her $350. She suffered a loss in her earnings which she estimates at $143, covering the period in which she was disabled. We have concluded to allow plaintiff $1,000 in addition to the above expenses.
As we have mentioned the defendant, Rubin Blitz, died and his executor has been made party defendant.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of Bertha Bates, the plaintiff, and against Alfred D. Danziger, the Testamentary Executor of the Succession of Rubin Blitz, and Standard Accident Insurance Company, in solido, in the sum of $1,580.50, with legal interest from judicial demand and all costs.
Reversed. *Page 519