FOURNET, Justice.
 

 We issued a writ of certiorari in this 'c'ase in order that we might review the judgment of the Court of Appeal for the Parish of Orleans (13 So.2d 516) reversing the judgment of the lower court dismissing the plaintiff’s suit against her landlord and his insurer and granting her a judgment against them in the sum of $1,580.50 for injuries sustained when she fell while negotiating a platform fronting a room adjacent to hers in the courtyard used in common by all of the tenants of the building.
 

 The defense, as reflected by the brief of the defendants, is that (1) no such accident happened; (2) the platform was unattached, forming no part of the leased premises; (3) the platform was neither placed there by the landlord nor with his authority; and (4) that the landlord was under no obligation to maintain or repair such a platform and, consequently, not liable for the injuries sustained by the plaintiff.
 

 We find no difficulty in arriving at the conclusion, as did the appellate court, that the accident did happen as alleged by the plaintiff in her petition. The record also shows that the plaintiff, Bertha Bates, rented room No. 6 in a two-story wooden house owned by Rubin Blitz, one of the defendants, and located at 2605 Washington avenue in New Orleans. This negro tenement house, containing twenty rooms, ten up and ten down, forms a wing or “L”, the long side of which faces on a rectangular dirt yard approximately 25 feet wide that is enclosed on two sides by the house itself, on a third by a'wooden fence on the ¡Robertson street side, and, on the fourth, or Washington avenue side, by a fence with
 
 *539
 
 a gate. Eight of the rooms, up and down, run the long side of the “L”, facing Robertson street and the wooden fence, while the two remaining rooms face the gate on Washington avenue, the only means of entrance and exit for all but the first downstairs room. Almost in the center of the yard and just about opposite the steps to room No. 6, occupied by the plaintiff, a stair rises from a concrete base to the gallery on the short side of the “L” and is protected and supported underneath by braces or rafters that make it difficult to pass under the stair without stooping or lowering the head. Because of the proximity of this stairway to the plaintiff’s front steps, in order to reach her room, it was necessary for her to pass close to the steps leading to room No. 5 and over a platform that was constructed in front of these steps for the use and convenience of the occupant of the room in negotiating the muddy and slushy spots caused by inadequate drainage facilities and the accumulation in puddles in front of the steps of the water running from the gallery fronting the upstairs rooms.
 

 It also appears that on the afternoon of Wednesday, April 19, 1939, at approximately 3:30, having left the front gate after talking with a friend, the plaintiff, a woman.of 47, weighing about 186 pounds, in negotiating this platform in front of room No. 5, placed her foot on a plank or planks that gave way, causing her to fall face forward but turning her toward the left when the plank, rising, struck her in the nose. She landed on her left side with her back toward the steps and her left arm, crumpled under her, was broken. On October 23 following, she filed this suit against her landlord, Rubin Blitz, and his insurer, the Standard Accident Insurance Company, seeking to recover $6,580.50 in damages. Blitz, having died during the pendency of this suit, his executor was joined as a party to the proceedings.
 

 The judge of the lower court, without assigning any written reasons, dismissed the plaintiff’s suit, and the Court of Appeal for the Parish of Orleans, reversing this, judgment, granted her damages for $1,580.-50 — $1,000 for the injury, suffering, and pain sustained by her, $350 for her doctor bill, $87.50 for her hospital bill, and $143. for earnings lost.
 

 Under the express provisions of Article 2695 of the Revised Civil Code “The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same,” and, as stated in the case of Glain v. Sparandeo, 119 La. 339, 44 So. 120, 121, “The lessor * * * is as much bound for the safety,, for ordinary use, of the necessary approaches and exits to and from the apartments which he lets as for the safety of the apartments themselves.”
 

 The. appellate court pretermitted the question of whether the platform in front of room No. 5, over which plaintiff fell.
 
 *541
 
 was constructed by the landlord or his agent and the question of whether it was attached to the step, being of the opinion that these platforms in front of the several rooms were necessary adjuncts of the leased premises, used with the full knowledge of the landlord for the convenience of the occupants of the respective rooms in negotiating the muddy places in front of the steps created because the landlord had failed to provide water spouts and gutters for the proper drainage of the roof water, and therefore permitted recovery under the decision of this court in the Glain case, which has been followed by the appellate courts in numerous instances, particularly in the cases of Estes v. Aetna Casualty & Surety Co., La.App., 157 So. 395, and Mosher v. Burglass, La.App., 170 So. 416.
 

 Counsel for the defendants argue that these cases can have no application since the Mosher case dealt with a defect in a gallery and the Estes case with a defect in a brick yard, while in the instant case the
 
 mud courtyard
 
 was not defective in any way and the platforms used by the tenants had been placed there to suit their own convenience, clearly bringing the case under the holding of this court in Fischer v. Wells Fargo & Co. Express, 143 La. 1081, 79 So. 868.
 

 In the Estes case, based on the holding in the Glain case above ‘quoted, the court pointed out in a well-considered opinion that Baudry-Lacantinerie, an eminent French authority, commenting under the heading “Contrat de Louage”, in Vol. 20 at p. 229, on Article 1721 of the Code Civil Francais (Code Napoleon), practically identical with Article 2695 of the Revised Code, said [157 So. 398]:
 

 “The enjoyment must be guaranteed to the tenant, not only of his apartment itself, but also of the accessories, such as
 
 the entrance, the janitor’s lodge,
 
 the courtyard,
 
 the stairways, the cellars, the water wells.
 

 “The tenant, having the right to use not only the principal thing, but also the accessories, his enjoyment must be guaranteed of the latter as well as of the principal thing.
 

 “Among the accessories must be included the common parts of the property, those of which the tenant has the enjoyment with other tenants. * * *” (Italics ours.)
 

 The author of the opinion in the Estes case also pointed out that while the civil law principle that the lessor is liable for damages resulting from defects in his property is not followed in the common law jurisdictions, where the general rule is that a tenant takes the leased premises subject to defects that do not amount to a trap, this general rule of the common law has a well-recognized exception, that is, “ ‘that the owner of a building who leases it to different tenants, and expressly or impliedly reserves portions thereof * * * for the use in common of different tenants, is liable for any personal injury to a tenant, or a person in privity with a tenant, due to defects in the portion of the leased premises of which the landlord so retains control * * quoting from the note in 25 A.L.R. 1273.
 

 Under these authorities the court concluded that the plaintiff, who had been in
 
 *543
 
 jured in attempting to negotiate a common brick courtyard that had become slick and slimy through improper water drainage, was entitled to recover.
 

 This principle of law, in our opinion, is eminently sound, for, as was also pointed out in the Estes case, “If the lessor is to be made liable for defects of which he has no actual knowledge and which exist in the property turned over to the tenant and placed under his sole and exclusive control, we can see no reason to relieve him of responsibility for defects in that part of the property over which he retains control and supervision and over which the tenant is given no right except that of use in common with others.”
 

 The plaintiff testified that when she moved into room No. 6 the platform represented by her in the photographs introduced in evidence as being in front of room No. 5 was there, as were the platforms in front of the other rooms in this common courtyard; that in going to and from her room it was necessary for her to cross this platform because the stairs leading to the upper rooms blocked the way making it impossible for her to by-pass it; and that the platform was apparently safe for she had passed over it daily during the entire time she had been living there (approximately nine months) without any mishap. She also stated most positively that the platform in question was nailed to the steps of room No. 5 and that because of the proximity of these steps to her own she had easily observed this fact on innumerable occasions. We are impressed with the plaintiff’s testimony for although she was subjected to a most vigorous cross-examination with respect to various incidents, the dates of their occurrence, and the details in connection therewith, she never wavered and, in fact, was corroborated on every important fact not only by her witnesses, but, in many instances, by the witnesses of the defendants.
 

 Olivia Wilson, the occupant of room No. 5, testified most positively that this platform was nailed to her bottom steps and that it had not only been nailed to them when she moved into the room some time prior to the date when the plaintiff moved on the premises, but, also, that the Sunday morning when the platforms were taken up she was awakened by the noise and went to the door and saw the lessor’s agent on the premises pulling the one attached to her steps aloose. She also stated there were no apparent defects in the platform for she had been walking on and over it during the entire period of her occupancy without mishap, although she weighed 199 pounds.
 

 Emma Himes, who witnessed the accident and also occupied room No. 10 on the downstairs short side of the “L”, stated very positively the platform was securely nailed to the steps of room No. 5.
 

 Robert Provost, the common-law husband of the plaintiff, who lived with her, corroborated the plaintiff’s testimony with respect to the condition of the steps in front of room No. S and, while he was not specifically asked whether the platform was nailed to these steps, he did state that when Dokes, the lessor’s agent on the premises, removed the platforms under instructions given him by Isidore Blitz, a son of the lessor, he had to “pull” and “tear” them up.
 

 
 *545
 
 Robert Lawrence, another tenant, who was one of the men playing checkers in the yard when the accident occurred, and saw it, testified that the two long pieces of the platform supporting the cross pieces were nailed to the steps on each side.
 

 It is true that another of plaintiff’s witnesses, Henderson Wright, who was also playing checkers in the yard when the accident occurred and later took the much-questioned photographs introduced by the plaintiff giving therein his version of the condition of the platform before and after the accident, testified his
 
 impression,
 
 admittedly very vague and indefinite, was that this platform was not nailed to the steps of room No. 5, he was not a tenant, only visiting in the yard to play checkers, and he stated he had never really noticed whether the platforms were nailed to the steps.
 

 To refute this testimony, the defendants offered as witnesses Nelson Dokes, a tenant; Isidore Blitz, a son of the lessor; Sarah Hunter, another tenant; and the adjuster for the insurance company who also acted as one of the defendants’ counsels.
 

 Dokes testified that he was given his rent free and $1 a week to “attend to the yard and see that things went on right,” and to collect and turn over rent from the other tenants to Isidore Blitz on Sunday. He stated there were only four platforms in the yard, those in front of rooms 3, 4, 5, and 10, and that only two of these, constructed by him in front of rooms 3 and 10 with 1x6 boards, were nailed to the steps. He further stated that the loose platform represented in the pictures in evidence as being in front of room No. 6, was, in fact, in front of roo'm No. S.
 

 The lessor’s son corroborated the testimony of Dokes, stating that when he visited the premises with the insurance adjuster some ten days following the accident he had occasion to notice there were no loose boards in front -of room No. S, but, instead, only the small removable platform represented in the pictures as being in front of the plaintiff’s room. He also stated that while these platforms in the yard had not been constructed by anyone with
 
 his
 
 authorization, he knew they were there for he had seen them on numerous occasions when he picked up the rent on Sundays and that he had no objection to their presence there.
 

 The insurance adjuster corroborated the statements of Blitz with reference to the condition of the yard and these platforms at the time they visited the premises together following the accident.
 

 Sarah Hunter, the only other tenant called by the defendants in addition to Dokes, stated her husband had constructed the platform in front of her room and that it was
 
 nailed
 
 to the steps, thus contradicting the statement of Dokes. that the only platforms nailed to the steps were those in front of rooms 3 and 10. But she was not asked whether the platform in front of room No. 5 was the one claimed to have been there by the plaintiff at the time of the accident nor whether it was nailed to these steps, although, as the occupant of room No. 4, immediately adjoining, she would have been exceptionally well • qualified to give testimony of this phase of the case. .
 

 
 *547
 
 The evidence offered by the defendants is not very impressive. Dokes was not only contradicted in many instances, but impeached in others, and while the testimony of the lessor’s son and the insurance adjuster, vague in other respects, was positive as to the location and condition of the platform in front of room No. 5 some ten days following the accident, it is interesting to note that although the defendants had been apprised of the plaintiff’s position long prior to the trial of this case (her attorney having furnished the adjuster with copies of the pictures later introduced in evidence showing the condition of the platform before and after the accident) they failed to produce any of the other tenants then or previously living on the premises than Dokes and Sarah Hunter, whose testimony has just been analyzed, to substantiate their contentions as to the condition and permanence of this platform in front of room No. 5. One of the fundamental rules of evidence is that a failure to call an available witness possessing peculiar knowledge concerning facts essential to a party’s case or to produce evidence of a more explicit, direct, and satisfactory character than that relied on by him, raises the inference or presumption that the testimony of the witness not called would not sustain his contention and that if more satisfactory evidence had been given it would prove detrimental in his cause. This is particularly true where no effort has been made to substantiate the statement of a witness whose credibility, although put in doubt, is susceptible of corroboration. King v. Atkins, 33 La.Ann. 1057; Crescent City Ice Co. v. Ermann, 36 La.Ann. 841; Pruyn v. Young, 51 La.Ann. 320, 25 So. 125; Nelson v. Vicksburg, S. & P. R. Co., 141 La. 475, 75 So. 212; Rubenstein v. Files, 146 La. 727, 84 So. 33; Toca v. Rojas, 152 La. 317, 318, 93 So. 108; Succession of Rageur, 155 La. 97, 98 So. 853; Perez v. Meraux, 201 La. 498, 9 So. 2d 662; Stanley v. Jones, 201 La. 549, 9 So.2d 678; II Wigmore on Evidence (3rd Ed.) 162, Sections 285 and 286; 22 C.J. 115, § 56; 31 C.J.S., Evidence, p. 856, § 156, subsec. c; 20 Am.Jur. 192, Section 187; and Ann.Cas.l914A, 915.
 

 We are therefore of the opinion that the plaintiff has shown by a clear preponderance of the evidence that her only means of reaching her room was across the courtyard, which necessitated her passage over the platform that was in front of room No. 5 when she moved on the premises and was attached to the steps of this room by nails. Consequently, the defendants are liable for the injuries sustained as the result of the defective condition of this platform.
 

 It is obvious that the holding in the Wells Fargo case has no application for, as expressed in its syllabus, the lessor in that case was absolved of responsibility for the injury sustained by the tenant by a falling ladder because the ladder was no part of the leased premises “and was not thereon when leased, or thereafter placed there by any officers or employes, or known to any officer or lessor.” In the instant case, the platform in controversy was attached to the leased premises, at the time the plaintiff moved there and it is shown by the testimony of the lessor’s son that he not only
 
 *549
 
 knew of its presence but that he had no objection thereto.
 

 While the defendants filed a plea of contributory negligence in the district court, it was apparently abandoned for it does not appear from their brief that this question was pressed in the appellate court; no mention is made of it in that court’s decision; and no mention has been made in the brief they filed here. In any event, the record is totally lacking of evidence that would sustain the plea.
 

 The defendants apparently do not question the amount of damages awarded the plaintiff by the appellate court, for this matter, likewise, is not mentioned in their brief. Regardless, we think the facts of the case disclosed by the record amply substantiate the amount awarded.
 

 For the reasons assigned, the judgment of the appellate court is affirmed; all costs to be borne by the defendants.
 

 ODOM, J., dissents.