LOTTINGER, Judge.
This is a tort action wherein the plaintiff, Patricia Prince, seeks damages in the amount of $1,476.10 for personal injuries and property damage sustained in an automobile accident which occurred in the Parish of Pointe Coupee on November 29, 1953. In her original petition the plaintiff alleged that just previous to the accident *737 she was driving east on U. S. Highway No. 190 in the aforesaid parish when the car preceding her came to a sudden stop because of an accident which had occurred somewhere beyond that vehicle’s path of travel; that she applied her brakes and came to a stop when she was suddenly struck from the rear by a car driven by defendant’s assured, Noah Bohrer. By way of amended petition plaintiff charged Bohrer with specific acts of negligence, namely, driving too fast, failing to keep his vehicle under control, not keeping a proper lookout and operating his vehicle with improper brakes.
The answer, after generally denying the allegations of the original and supplemental petitions, alleged that just previous to the collision the plaintiff had lost control of her vehicle which skidded into the automobile of Bohrer. Contributory negligence was pleaded as an alternative defense.
The matter was duly tried in the Lower Court and is before us on an appeal taken by the plaintiff from a judgment which dismissed her demands.
The record shows that on the day of the accident the plaintiff was returning to Louisiana State University from her home where she had spent the Thanksgiving Holidays. Riding with her were two passengers, James Edward Keegan and Mrs. Mabel Renard. According to the plaintiff’s testimony, the accident occurred between 5:00 and 5:30 P.M. when it was dark enough to require headlights. All witnesses agreed that prior to and at the time of the accident a light rain was falling.
The pertinent part of the plaintiff’s testimony is as follows:
“Q. Immediately prior to the accident that is the first collision you were involved in, did you pass an automobile, or more than one automobile, just west of the place where the accident happened? A. I don’t recall.
“Q. You just don’t remember whether you did or didn’t? A. No.
“Q. Would you recall whether or not you had just pulled back into the traffic lane for traveling East immediately prior to noticing that the car traveling in front of you, which you ultimately struck in the rear, was beginning to stop ? A. No.
“Q. If another witness were to testify that you had just passed an automobile and were returning to the traffic lane, traffic traveling towards Baton Rouge at the time the car traveling ahead of you began to stop you wouldn’t deny that would you? A. Well, I don’t specifically remember whether I would or not. I ccm’t an-szver that.
******
“Q. Miss Prince, you have testified that when Mr. Bohrer’s car struck your automobile, that your car was at approximately a forty-five degree angle with the highway. Is that correct? A. Yes.
“Q. When you came in contact with the car in front of you, what was the position of your car on the highway? A. I had pulled back in, it probably was at an angle then.
“Q. About what degree? A. I can’t specifically say to what degree, but I had pulled back in, and the front of my car in more than the back.
“Q. You say the front of your car was in more than the back? A. Yes.
“Q. Of course, you are my witness and I don’t want to argue with you, but I don’t understand how the rear of your car was out more than the front of your car, if you were going straight ahead? A. I had pulled back in.
i|í í(í íjí íjí 5|c
“Q. Did you come in contact with the car in front of you as you pulled back to the right? A. Yes.
“Q. What part of the car in front of you did you come in contact with?
*738 A. I came in contact with the left side of the bumper.
“Q. That is the left side of the rear bumper? A. Thafs right.
“Q. I understand before you were able to bring your car to a stop behind the Alabama car, (the car in front of plaintiff) you did pull out in front of the Alabama car? A. Yes.
* * * * * *
“Q. Were the two cars touching each other when they came to rest after the collision between your car and Mr. Bohrer’s car? A. No, Mr. Bohrer’s car glanced off mine and got off the side of the road and rolled down into the ditch.
“Q. Mr. Bohrer’s car didn’t come in contact with the front? A. Not directly, but he came all the way to the light.
“Q. His car didn’t come into contact with your car? A. Not directly.
“Q. Mr. Keegan got the license number because it was felt at that time that car may have been connected with the accident, is that right ? A. That’s right.
“Q. If you had continued towards Baton Rouge, instead of trying to pass the car in front of you, do you think this accident would have happened? A. As far as Mr. Bohrer’s car hitting me?
“Q. No. Suppose you had not been 'trying to pass the car and drive on, would the accident have happened if you had not tried to pass the car? Would you have an opinion on that? A. I don’t know. If I hadn’t pulled out and tried to get back in the lane?
“Q. Yes. A. Yes.
“Q. Do you know why ? A. All of the cars had stopped and I went back in. I had to stop. I don’t believe I got far enough out to have too much effect.” (Emphasis supplied.)
Noah Bohrer gave the following as his version of how the accident occurred:
“Q. Will you describe what she did in that respect? A. She attempted to pass the car, (Alabama car) and I could see it jerk, and after the car pulled away from the impact of it, she was in the middle of the highway, and I tried to get out of her way, but couldn’t do anything, and I took to the right.
“What led you to believe she was fixing to go around the car? A. Going around the blackline.
“Q. Isn’t that what she did? A. A. No, not my belief. She wanted to pass the car.
“Q. Did she pull over to her left lane of traffic? A. Just to pass the car.
“Q. Is it your testimony when she struck the car in front of her, as you say she did, that her car turned around the other way? A. Yes.
“Q. She had ceased traveling east and started traveling back west? A. She was in the highway.
“Q. Then tell the Court how her car was pointed? A. Her car was pointed opposite the way she was traveling.
“Q. In other words, your testimony is she was at right angle to the road? A. Yes, sir.
“Q: In other words, across the high'way north and south instead of going east and west? A. Right.
“Q. What part of her car did you strike? A. I didn’t strike her car, she struck mine. She hit the car and threw her halfway the middle of the road, and when she attempted to get off the highway she collided with me.
“Q. What were you doing at that time? A. Trying to keep from hitting her.
*739 “Q. Then what did you do? A. Went off the highway.” (Emphasis supplied.)
James Edward Keegan, though a passenger in the plaintiff’s car, was not called as a witness by her but his testimony was taken at the instance of the defendant by deposition. Part of his deposition reads as follows:
“Interrogatory No. 8. If you witnessed the accident or accidents in which Miss Patricia Prince was involved on November 29, 1953, while riding in an automobile, state who was driving that automobile and where you were seated in that vehicle.
“Answer: Patricia Prince was driving the automobile and I was seated in the right front seat of Miss Prince’s car.
“Interrogatory No. 9. Describe fully how the accident or accidents occurred on November 29, 1953, in which Miss Patricia Prince was involved.
“Answer: Patricia Prince passed a car and we pulled back into our own lane, applied the brakes, slid, she let off the brakes and attempted to go around the car in front of us but struck its left rear fender with our right front fender and grill. This spun the rear end of our car to the north. We came to a complete stop, and a car approaching from our rear hit our right side with his left side. He then went on off into the ditch and slid us on down the highway above five or six more feet. We were brought crossways in the road and straddled the center line.
“Interrogatory No. 10. Immediately prior to the first accident in which Miss Prince was involved on November 29, 1953, had she or had she not just passed an automobile traveling east toward Baton Rouge, Louisiana, when the car immediately ahead of Miss Prince’s car began to slow down or stop? At this time how fast was Miss Prince driving the automobile which she was operating?
“Answer: She had passed the car, she was driving approximately 25 or 30 miles per hour.
“Interrogatory No. 12. What portion of the car driven by Miss Prince came into contact with what portion of the automobile which had been traveling ahead of the automobile driven by Miss Prince toward Baton Rouge?
“Answer: The right part of the grill and the right front fender of Miss Prince’s car came in contact with the left rear fender of the car ahead.
“Interrogatory No. 17. What effect did the collision between the front of Miss Prince’s automobile and the rear of the car traveling ahead of that automobile have upon the subsequent action of the automobile driven by Miss Prince?
“Answer: It spun the rear end of Miss Prince’s car to the north and we were across the highway and straddled the center line. We were facing south and the rear end spun to the north.” (Emphasis supplied.)
The plaintiff made no effort to produce Mrs. Mable Renard nor did she make any attempt to explain why Mrs. Renard was not called as a witness, even though Mrs. Renard was a passenger and guest of the plaintiff at the time the accident occurred. Nor did the plaintiff produce the occupants of the Alabama car although Keegan’s deposition indicates he gave the plaintiff the name and address of the driver of that vehicle. Under these circumstances, the trial court concluded that the testimony of Mrs. Mable Renard would have been adverse to the plaintiff. The law of Louisiana is well settled on this point. Perez v. Meraux, 201 La. 498, 9 So.2d 662; Bates v. Blitz, 205 La. 536, 17 So.2d 816; Succession of Yeates, 213 La. 541, 35 So.2d 210; Pearlstine v. Mattes, 223 La. 1032, 67 So.2d 582.
*740 The trial judge, in his written reasons for judgment, found that the plaintiff was negligent in creating a sudden emergency which Bohrer did all within his power to avert and that, therefore, she had failed to prove her case. The record reveals no manifest error in his findings and the judgment appealed from is therefore affirmed.
Judgment affirmed.