ELLIS, Judge.
During the later afternoon of Feb. 20, 1957, Paul O. Bennett was driving his car *676 north on Highway 51 and made a left hand turn across said highway intending to enter the driveway to- his home, when his car was struck by the plaintiff’s, which at the time was being driven by Eunice Bourgeois south on said highway. At the time of the collision plaintiff was occupying the right front seat of his automobile being driven by Eunice Bourgeois.
Suit was filed against Bennett and his insurance company and against the Standard Accident Insurance Company, the insurer of the plaintiff’s automobile. The basic allegation of plaintiff’s petition charged that the acccident was due “solely to the negligence of Paul O. Bennett in the operation of the Chrysler automobile, or alternatively that the accident was due solely to the negligence of Eunice Mclver Bourgeois in the operation of the Cadillac automobile, or in the further alternative that the accident was due to the combined and concurrent negligence of the said Paul O. Bennett and the said Eunice Mclver Bourgeois in the operation of the respective automobiles which they were driving.”
Plaintiff compromised and settled his suit as against Paul O. Bennett and his insurer, with proper reservation of his rights to proceed against the insurer of his automobile, based upon the alleged negligence of Eunice Bourgeois who was driving as plaintiff’s agent and/or with his consent and permission at the time of the accident.
On the date of the trial in the district court, plaintiff made an objection to the introduction of any testimony by the defendant tending to prove contributory negligence on the part of the plaintiff on the ground that the defendant in his answer had not sufficiently or properly or legally plead the contributory negligence of the plaintiff. The defendant then offered to amend and supplement his answer so as to set forth in full the facts upon which his charge of contributory negligence was based, but the District Court ruled that the answer was sufficient and over the objection of counsel for the plaintiff allowed the introduction of such evidence.
After a full hearing, the district judge with written reasons held as follows, and we quote:
“It is the court’s opinion that Mr. Bennett, driver of the Chrysler, was negligent in making a left turn off of a heavily traveled highway, into a private driveway, without first ascertaining that such a maneuver could be made in safety; that this negligence was the proximate cause of this accident, and that there was no concurrent negligence on the part of Mrs. Bourgeois, the driver of plaintiff’s car. Therefore, it is unnecessary to decide any question concerning contributory negligence on the part of plaintiff or whether or not same was adequately pleaded in defendant’s answer.
“For the foregoing reasons the court renders judgment in favor of defendant, rejecting the demand of plaintiff against this defendant, Standard Accident Insurance Company.”
From the judgment of the lower court plaintiff has prosecuted this appeal.
Counsel for plaintiff in his argument and in his brief has set forth specific facts which he believes have proven the negligence of Eunice Bourgeois. It is argued that the defendant obviously conceded the negligence of Eunice Bourgeois as he did not make any attempt to get her deposition as a witness nor make any reasonable explanation for jiis failure to hold the case open for obtaining her deposition, and that under the settled law of Louisiana it is proper for the court to conclude that the testimony of this witness would have been adverse to Standard Accident Insurance Company, and in support thereof counsel cites Perez v. Meraux, 201 La. 498, 9 So.2d 662; Bates v. Britz, 205 La. 536, 537, 17 So.2d 816; Succession of Yeates, 213 La. 541, 35 So.2d 210; Pearlstine v. Mattis, 223 La. 1032, 67 So.2d 582; Prince v. Liberty Mutual Ins. Co., La.App., *677 106 So.2d 736. Counsel for plaintiff states in his brief that he does recall the defendant’s attorney stating that a subpoena had been issued for Eunice Bourgeois and that she had not been located and “we did not dispute that statement at all.” Futhermore, he stated in his brief that he recalled one of the attorneys for defendant had said it was rumored that Eunice Bourgeois had moved to Tennessee, and further that counsel for defendant stated he might desire to have the case laid over for the taking of the testimony of Eunice Bourgeois by deposition if she could be located, to which counsel for the plaintiff stated they had no objection to that being done,
In addition the district judge states in her written reasons for judgment that, “The absence of Mrs. Bourgeois and the fact of her unavailability as a witness at the trial was satisfactorily explained at the time of the trial and no presumption of any kind results from failure to have her called as a witness herein.”
Under these facts we do not believe that any presumption or inference should be drawn that Mrs. Bourgeois’ testimony would be adverse to the defendant as a subpoena was issued for her and she could not be located and presumably had moved to the state of Tennessee. In any event, such a presumption or inference would not, in our opinion, be sufficient to overcome positive testimony and positive physical facts which support the judgment of the trial court. We are of the opinion that the trial judge has correctly and substantially stated the facts, has drawn the proper conclusion from such facts and we therefore take the liberty of quoting and adopting that portion of her reasons bearing upon and holding the negligence of Bennett in making an unwarranted and illegal left turn, that is, when approaching traffic was too close for him to do so in safety as the sole proximate cause of the accident. We quote:
“This collision occurred on U.S. Highway SI, which runs north and south, in front of the Louisiana Forestry Station which is located on the east side of the highway, about two miles north of its intersection with U.S. Highway 190.
“Plaintiff’s Cadillac, driven by Mrs. Bourgeois, and in which plaintiff was riding, was traveling south, and Paul O. Bennett, who had been driving his Chrysler north, was, at the time of the collision, either in the act of negotiating a left turn or had already made a left turn off the highway into his own private driveway which was located on the west side of the highway, directly across from the Forestry station.”
* * * * * *
“On the question of negligence of the driver of the Chrysler, consideration is given first to Mr. Bennett’s own testimony. He says he put on his blinker turning lights when he was about a block from his driveway. He doesn’t remember when he first saw the Cadillac approaching, but he did see it when he began his turn, and it was about a block from him at that time. A city block ranges in distance from 300 to 400 feet, depending upon the municipality, and this distance can be traversed in from 4 to 6 seconds by a vehicle traveling 60 mph, which was the legal speed at that point.
“Bennett’s car had slowed down to make a turn into the driveway which was very narrow, stated by him to be about 12 feet wide. He further stated he came clear up to a point opposite his driveway and then made his turn directly across toward the driveway. To thus turn directly across the highway into a narrow driveway, it was necessary for Bennett to slow down to such a speed as would appear to the drive of an oncoming vehicle that he had come almost to a complete stop. Even with his blinker lights on, the driver of an oncoming vehicle who was within a few seconds driving time of him would have every reason to believe that the vehicle signalling for a turn would yield the right of way and let him pass before making his turn. Bennett testified he ‘didn’t give the matter too much *678 thought’ because he thought he had plenty of time to turn in safety.
*‘As to distance between the two vehicles -when the Chrysler started its turn, the plaintiff’s testimony is that it was from 70 to 100 feet or maybe 150 feet from the Cadillac, instead of the city block as testified .by Bennett.
“A photographer, en route home, happened upon the scene very shortly after the accident, and took a number of pictures and measured the skid marks of the Cadillac. This photographer measured 119 feet of skid marks behind the Cadillac which he positively identified as having been made by the Cadillac. He also testified that there were 50 feet more of dim skid marks which might be from the Cadillac. The skid marks leading to the Cadillac are plainly visible in Photographs P8, and D.8, but in the foreground of these pictures these tire marks plainly converge with tire marks of other vehicles. The court believes that a sudden application of brakes in this kind of an emergency, would not result in dim skid marks, but that the skid marks would be as well defined at the beginning of the skid as at the end. Hence, the court believes that the 119 feet of skid marks were the only ones made by the Cadillac.
“According to the Safety Department’s speed chart, a vehicle traveling 60 mph., which was the legal rate of speed at this point, would require 185 feet after actual application of the brakes in which to be brought to a stop. Therefore, this Cadillac, which is a heavy car, would still pack considerable wallop even after skidding 119 feet and this amount of skidding would not necessarily indicate excessive speed in a 60 mph zone.
“There has been produced -here the testimony of three witnesses who were involved in the accident, i. e., Mr. Bennett and Mrs. Pevey who were in the Chrysler, and plaintiff who was in the Cadillac. The absence of . Mrs. Bourgeois and the fact of her unavailability as a witness at the trial were satisfactorily explained at the time of the trial and no presumption of any kind results from failure to have her called as a witness herein.
“Plaintiff’s testimony imputes no negligence whatever to Mrs. Bourgeois. He testified to her reasonable rate of speed prior to the accident, that the collision took place when the Chrysler came over into Mrs. Bourgeois’ lane of traffic, at a time when it was too close for her to avoid the accident.
“For proof of his case against Standard Accident, plaintiff relies heavily upon Mr. Bennett’s version of the accident, which is that the Chrysler was struck first in the rear after he had completed his turn and at a time when there was ample room in the highway for the Cadillac to pass in safety.
“The large number of photographs taken at the scene so shortly after the collision proved valuable. Especially studying those marked P.7, D.4, and P.2, it seems conclusive that the Chrysler received its most severe blow on its right front corner, and a second blow of less force on the side of the right rear fender. The damage to the Cadillac was directly across the front or maybe very slightly more to the left front.
“This would strongly indicate that the front of the Cadillac first struck the Chrysler just as the Chrysler entered the southbound lane and before it had straightened out to face west, corroborating plaintiff’s testimony that the impact was in the southbound lane.
“Mr. Bennett was thrown from his car and landed in the ditch on the west side of the highway, and his passenger, Mrs. Pevey, was thrown from the car and landed on the pavement in the middle of the highway according to her daughter, Mrs. Bennett, who was at the house, heard the crash and saw her mother as she landed on the pavement. Both were rendered completely unconscious by the impact. Mrs. Pevey who is clearly shown in Photographs P.2 and D.8, must have been moved slightly from the place she originally fell, because in D.8 she *679 is shown lying within the skid marks leading to the Cadillac. Since she was not run over by the Cadillac, she must have been moved a few feet when she was wrapped in the blanket which is shown in the picture.
“These circumstances would verify the aforementioned assumption that the Chrysler was first struck on its right front corner, and would further indicate that this blow started the Chrysler turning to the left or anti-clockwise, that the second blow on the right rear fender came within a fraction of a second of the first impact; that Bennett was first thrown from his car and then Mrs. Pevey. The Chrysler then proceeded on across the highway and came to rest in the ditch on the east side.
“After striking the Chrysler, the Cadillac came to rest in the ditch on the west side of the highway between the Bennett driveway and the place where Mr. Bennett was lying unconscious in the ditch south of the driveway. It is not clear whether the occupants of the Cadillac were thrown from the car by the impact or were taken from the car following the impact.
“Therefore, the testimony of Mr. Bennett that he thought his automobile was struck first on the rear is negatived by the physical facts as hereinabove set out. The testimony of Mrs. Pevey that she had her hand on the door at the time of the impact does not .prove that the Chrysler had completed its turn at the time of the impact, especially in view of her further testimony that it was her custom to place her hand on the door for some distance before the car in which she is riding came to a stop.”
“In addition to positive legislative enactment in regard to vehicles turning on highways ([LSA] RS 32:235), Louisiana jurisprudence is well settled that turning left off a heavily traveled highway, especially at a point which is not an intersection, is one of the most dangerous maneuvers a driver can make, and when such a left turn is being made and an accident occurs, the burden rests heavily on the driver who is making the left turn to explain how the accident occurred and to show that he was free from negligence. (See Washington Fire & Marine Insurance Co. v. Firemen’s Insurance Co. [232 La. 379] 94 So.2d 295).”
* * * * * *
“It is the court’s opinion that Mr. Bennett, driver of the Chrysler, was negligent in making a left turn off of a heavily traveled highway, into a private driveway, without first ascertaining that such a maneuver could be made in safety; that this negligence was the proximate cause of this accident, and that there was no concurrent negligence on the part of Mrs. Bourgeois, the driver of plaintiff’s car. Therefore, it is unnecessary to decide any question concerning contributory negligence on the part of plaintiff or whether or not same was adequately pleaded in defendant’s answer.
“For the foregoing reasons the court renders judgment in favor of defendant, rejecting the demand of plaintiff against this defendant, Standard Accident Insurance Company.”
Counsel for the plaintiff at the inception of the trial objected to any evidence to show contributory negligence on the part of the plaintiff on the ground that the petition did not sufficiently or in conformity with the settled jurisprudence set forth any facts upon which a charge of contributory negligence was based. Upon the objection being made, counsel for the defendant requested the court to allow him to file an amendment to the answer so that he could prove contributory negligence. The court, however, ruled that the defendant’s pleadings were sufficient to introduce evidence of contributory negligence. In view of the fact that the lower court held, and this court is of the same opinion, that the sole proximate cause of this accident and plaintiff’s injuries was the negligence of Bennett in attempting a left hand turn when it was unsafe due to the nearness of approaching traffic to do so, it was unnecessary for the district court or for this court to pass upon the sufficiency of the pleadings in this respect. Testimony as to *680 the intoxication of Eunice Bourgeois and plaintiff was offered over the objection ■of counsel for defendant, and the district judge in her ruling stated she believed the objection was good but would allow the .testimony to be introduced. The testimony should have been restricted and the objection sustained as there was no allegation whatsoever of intoxication in the petition. Be that as it may, the testimony was offered in reality to attempt to prove the contributory negligence of the plaintiff, which it is not necessary that we go into in view of our holding, supra.
We do not believe that the finding of the lower court to the effect that Mrs. Bourgeois was not driving plaintiff’s car in excess of 60 miles an hour is manifestly erroneous. In fact, we believe that she was correct in this conclusion from the testimony. Even if the skid marks had been 169 feet, which we do not believe was proven by a preponderance of the evidence, the speed would not necessarily be more than 60 miles an hour under the various speed charts. Furthermore, the physical facts show that Bennett’s car was most probably facing in a northwesterly direction at the time it was struck by the car of the plaintiff being driven by Eunice Bourgeois, for the physical damage to the two automobiles shows this to be true. Furthermore, the first impact had to be between the right front of Bennett’s car and the left front of the'plaintiff’s car and not by the plaintiff’s car striking the right rear bumper of Bennett’s car. This would have been practically impossible under the physical facts. We believe what happened was that the cars struck with their front ends first and the Bennett car spun around and either struck the side of the Cadillac or was struck by the Cadillac again on its right rear fender as it turned. Also, the Cadillac went down the road and to its right in the ditch and the Bennett car turned completely around and stopped across the highway with its front end facing in a southeasterly direction in the ditch on the opposite side of the road.
After a careful consideration of all the evidence in the record and the arguments and briefs, we are of the opinion that the judgment of the District Court is correct and it will accordingly be affirmed.
Affirmed.