141 So.2d 482 (1962)
Sander SABIN
v.
C & L DEVELOPMENT CORPORATION.
No. 5554.
Court of Appeal of Louisiana, First Circuit.
May 16, 1962.
*483 Kiser, Heaton, Craig & Cangelosi, by Roy Cangelosi, Jr., Baton Rouge, for appellant.
Sanders, Miller, Downing, Rubin & Kean, by J. Dale Powers, Baton Rouge, for appellee.
Before LOTTINGER, LANDRY and REID, JJ.
LANDRY, Judge.
This is a damage suit in which plaintiff, Sander Sabin, seeks remuneration for personal injuries allegedly sustained April 29, 1959, upon which date plaintiff fell into a shallow drainage ditch situated on the property of plaintiff's lessor and landlord, C & L Development Corporation, made defendant in these proceedings. From the judgment of the trial court rejecting his demand, plaintiff has taken this appeal.
The salient facts giving rise to this litigation are not in serious dispute between the parties hereto. There is, however, sharp disagreement between the parties respecting the legal principles determinative of the issue of defendant's alleged liability in damages to plaintiff herein.
*484 For a period of approximately two years prior to and on the date of the accident in question, plaintiff was lessee and tenant of a ground floor apartment in one of the units of a multi-building apartment project known as Villa Rose Apartments, owned and operated by defendant corporation and situated on South Acadian Throughway in the City of Baton Rouge, Louisiana. For said accommodations plaintiff paid defendant rental in the sum of $80.00 monthly.
In the petition filed herein plaintiff alleges he was injured as a result of a defect in the leased premises. We believe that a somewhat detailed description of the premises in question will afford a clearer understanding of the nature of the alleged defect and the circumstances surrounding the incident which resulted in plaintiff's injury.
Some distance northwesterly of the building in which plaintiff's apartment is situated (the exact distance not appearing in the record) is located a row of carports provided for the garaging of automobiles belonging to the numerous tenants occupying units in defendant's apartment project. The most southerly of this line of carports (the one nearest the building in which plaintiff's apartment was situated) was assigned to and used by plaintiff for the storage of plaintiff's automobile. Immediately adjoining plaintiff's carport (on the south thereof) is situated a small brick washhouse (designated as washhouse No. 3) which latter structure rests upon a concrete slab foundation and floor. The concrete slab on which washhouse No. 3 is erected extends approximately 3 feet beyond the south wall of the building to form a concrete apron of that approximate width along the south side of said building. The original purpose of the concrete projection is not fully explained in the record. It appears, however, that, with the passage of time, this concrete slab or apron was used progressively more by the tenants as a place to deposit and dispose of old newspapers and rubbish other than garbage. There is some evidence in the record to the effect that the aforesaid use of said slab was not authorized by defendant. It further appears that defendant had previously addressed letters to its tenants requesting that the practice of depositing trash at said point be discontinued and that, notwithstanding defendant's said admonitions some tenants continued to deposit trash and discard newspapers on the slab in question. The record, however, contains no evidence to the effect that plaintiff either was sent or received a letter requesting that he cease the practice of discarding waste material by depositing it adjacent to the washhouse involved. The record further shows that the area between the apartment buildings located east and south of the washhouse and carports previously mentioned has been converted into driveways and a parking lot by paving the surface thereof with concrete. South of washhouse No. 3 the elevation of the paved surface of the parking area is approximately 3 to 4 inches below that of the top of the slab adjacent to the south wall of said washhouse. Between the concrete projection along the south side of the washhouse and the paved parking area to the south thereof is a small drainage ditch approximately 24 inches in width and an estimated 14 inches in depth. Since the aforesaid drainage facility parallels and separates the slab adjacent to washhouse No. 3 from the paved parking area to the south thereof, to gain access to the slab to deposit trash thereon of necessity a person had to cross the drainage ditch in some manner or other.
At approximately 12:00 O'clock Noon on the date of the accident in question, plaintiff had taken some newspapers which he desired to discard and deposited them on the slab adjacent to the south wall of washhouse No. 3. As plaintiff turned to retrace his steps in a southerly direction and returned to his apartment, he accidentally stepped off of the slab into the drainage ditch, lost his balance and fell. To protect his face from injury, plaintiff broke the force of his fall by extending his arms and in so doing struck his arm on the edge of the paved surface of the parking area running along the southern extremity of the *485 ditch thereby incurring a fracture of his right arm.
Succinctly stated, plaintiff contends the ditch constituted a vice or defect in the leased premises, not necessarily because its existence per se constituted it a vice or defect, but because defendant permitted it to become so overgrown with grass and weeds that it amounted to a trap by creating the impression that the unpaved area devoted to drainage purposes was in fact solid ground. Plaintiff further alleges he was unaware of the presence of the ditch and in substance charges that defendant's failure to properly maintain the ditch free of weeds and grass was tantamount to representing same to be a safe walkway.
Defendant maintains the ditch was a necessary adjunct to its facilities and did not constitute either a vice or defect in defendant's premises because the presence of the ditch was obvious to a reasonably careful and prudent person. Defendant expressly denies the ditch was so overgrown with weeds or grass as to create the impression that the unpaved strip was solid ground. Alternatively, defendant charges plaintiff with contributory negligence in failing to observe the ditch as well as the difference in elevation between the top of the concrete slab next to the washhouse and the top of the pavement covering the parking area immediately to the south of the ditch. The learned trial court concluded plaintiff was contributorily negligent.
Under the provisions of LSA-C.C. Article 2695, the lessor is liable in damages to his tenant for injuries to the latter resulting from vices or defects in the leased premises. The liability provided for in the above numbered article extends not only to vices or defects in the apartment occupied by the lessee but also to the accessories thereto including the entrance, courtyard, stairways and approaches used in common with other tenants. Estes v. Aetna Casualty & Surety Co., La.App., 157 So. 395; Bates v. Blitz, 205 La. 536, 17 So.2d 816.
The fact that a landlord or lessor may be unaware of a vice or defect in the leased premises does not exonerate him from liability for injuries occasioned thereby. Thompson v. Moran, 19 La.App. 343, 140 So. 291; Mobry v. Frazier, La.App., 4 So.2d 556. Knowledge alone on the part of the injured party that the premises were in a defective condition or contained a vice does not per se preclude his action for recovery of damages. Gray v. Succession of Spiro, La.App., 14 So.2d 92; Gilliam v. Lumbermens Mutual Casualty Company, 240 La. 697, 124 So.2d 913.
On the other hand, however, the landlord is not the insurer of his tenant's safety and the tenant who claims damages for injuries allegedly occasioned by a vice or defect in the leased premises bears the burden of establishing his claim to a legal certainty by a fair preponderance of the evidence. Davilla v. Richardson, La.App., 120 So.2d 293.
In support of his claim plaintiff produced the testimony of three witnesses, namely, plaintiff's attending physician (who had no knowledge of the condition of defendant's premises); Jerry Harold (a professional photographer who photographed the scene of the accident) and plaintiff himself.
Mr. Harold identified four photographs offered in evidence on plaintiff's behalf and further testified that he examined and took pictures of the site of the accident three days following the date of plaintiff's injury. Harold's inspection of the scene of the accident included stepping into the ditch in question from which examination he estimated its depth to be some 12 to 18 inches. In Harold's opinion the ditch was not readily apparent or noticeable because of the growth of weeds and grass thereon. He also testified that although it was obvious that the area between the parking lot pavement and the slab next to the washhouse was depressed, there was nothing to indicate that the depression extended below the bases of the respective paved surfaces or, in other words, that the unpaved area *486 was no deeper than the thickness of the paved surface on either side thereof.
Plaintiff further testified that he examined the site of his accident two days prior to trial of the case and upon actual measurement determined the ditch to be 2 feet in width and 14 inches deep. Plaintiff also noted that the grass and weeds had been cut and the ditch recently cleaned. His testimony in this regard, however, does not show the condition of the ditch at the time of the accident. It does, however, corroborate the testimony of defendant's manager, Brannon, to the effect that, to improve the flow of water, the ditch had been cleaned and deepened subsequent to plaintiff's accident.
Plaintiff introduced in evidence four excellent photographs which show the scene of the accident as it existed at the time of his injury. The photographs in question show the area in minute detail including the south wall of the washhouse, the slab adjacent thereto upon which trash had been deposited, the ditch itself, and a portion of the paved parking area adjoining the ditch on the south. The photographs show an obvious drop or depression between the two surfaced areas. While it is impossible from the record to determine the exact depth of the ditch on the date of plaintiff's injury, the photographs clearly reveal a depression into which no prudent person would step or walk except perhaps intentionally as did Mr. Harold for the express purpose of determining its depth. In the case at bar the accident giving rise to the plaintiff's complaint occurred in midday and involved a tenant who was familiar with the premises. Although plaintiff testified he had never previously deposited trash next to washhouse No. 3, he readily admitted he daily passed within a few feet thereof in walking to and fro from his apartment and the carport allotted for his use. Plaintiff had been a tenant in the apartment project for a period of two years preceding his injury and also lived therein when the parking area south of the washroom was paved. As previously mentioned, plaintiff's knowledge alone of the existence of the defect (if the ditch in question be so considered arguendo) would not bar plaintiff's recovery. Bates v. Blitz, supra, Mobry v. Frazier, supra. Equally applicable, however, is the rule that a landlord is answerable in damages only for injuries caused by defects or vices which may be expected to cause injury while the premises are being subjected to normal use. Chaix v. Viau, La.App., 15 So.2d 662. Similarly, where the injury complained of results from a tenant's failure to act prudently or exercise ordinary care, he cannot recover therefor. Briscoe et ux. v. Bailey et al., La.App., 74 So.2d 770; Denneker v. Pecoraro, La.App., 64 So.2d 510.
In the instant case we conclude that the drainage ditch in question did not constitute a vice or a defect in defendant's premises. The facility in question was necessary to the proper drainage of the parking area and grounds surrounding the washhouse which was provided for the use and convenience of defendant's tenants. It was constructed in a normal manner. The evidence does not substantiate plaintiff's contention that the ditch was permitted to become overgrown with grass and weeds to the extent it became a trap to persons unaware of its existence. Neither does the record corroborate plaintiff's argument that the condition of the ditch was such as to deceive an unsuspecting person into believing that the unpaved area was solid ground. On the contrary, the record reveals the existence of the ditch should have been readily apparent to anyone exercising only the slightest caution. Moreover, the following testimony of plaintiff appearing at Pages 52 and 59 of the record indicates that plaintiff's fall was not precipitated by his deliberately stepping into the ditch thinking it was solid ground but rather that plaintiff tripped and fell while in the act of turning around to retrace his steps and return to his residence:
*487 "Q. What I am trying to get at is you intended to step onto this grassy area, did you not, in order to come off the slab.
"A. That, Judge, I don't know. All I know is I turned around, whether I intended to step on the grassy area or the parking lot, I can't say whether I intended to step on either one of them. All I know is as I turned around, my foot hit the ditch and I fell immediately. I didn't have a chance to step any place. As I turned around, my foot went into the ditch, thinking that it was solid area.
"Q. How long had you lived there on those premises before you went out there and put this garbage on that slab?
"A. How long did I live there?
"Q. After
"A. It isn't garbage, Judge, it's newspapers. Two years.
"Q. Two years?
"A. Yes, sir."

* * * * * *
"Q. Mr. Sabin, did you look where you stepped?
"A. When I put the garbage downI mean the trash? Yes, I did.
"Q. And when you were leaving, when you had put it down, had turned around and were leaving the concrete slab
"A. When I turned around, I stepped into the depressed area before I could even look around.
"Q. And you did not look at the grass or the condition of the hole that you stepped into?
"A. It didn't lookit looked like solid ground to me.
"Q. Did you look at it?
"A. At the time you mean?
"Q. Yes, sir.
"A. Yes, I looked at it. It looked like solid ground.
"Q. And you could not see that there was a ditch there
"A. No, sir, I couldn't see the ditch."
The record further shows that although plaintiff did not recall how he stepped onto the slab, in the first place, it is reasonably certain that in order for plaintiff to reach the slab he must of necessity have crossed the ditch into which he alleges he fell upon his return journey. From the record of this case there appears no valid reason why plaintiff herein did not observe the obvious. We believe plaintiff's injuries resulted from his failure to exercise ordinary care as a result of which he neglected to note an apparent condition clearly and plainly visible under the circumstances herein shown. The judgment of the trial court is therefore affirmed.
Affirmed.