This is a suit in which plaintiffs, Albert Burch and wife, for themselves and on behalf of their minor daughter, seek to recover damages from their landlord, the defendant, Ole Mathson, on account of injuries sustained by their said minor daughter, Catheline Burch. The allegations, which are the basis of the suit, represent that during the year 1941, petitioner, Albert Burch, rented a house located in the Town of Winnfield, Louisiana, from the defendant, Ole Mathson; that on the morning of April 15, 1942, petitioner's daughter, Catheline Burch, then fifteen years of age, while sweeping the front porch of the rented dwelling, fell through the porch flooring, seriously injuring her right leg just below the knee, from which injuries she continued to suffer; that the accident was the result of gross negligence and carelessness of defendant landlord in failing to keep the rented premises in a proper state of repair. The other allegations of the original and supplemental petitions consist of elaborations of the material facts as above noted, itemization of damages, etc., which facts we do not deem it necessary to summarize.
The suit was originally filed April 12, 1943. A plea of prescription, among other pleas and exceptions, was filed on behalf of the defendant, which plea was overruled by the lower Court. We do not find it necessary to consider the plea of prescription, inasmuch as the facts developed on trial of the case are plain and convincing, and we prefer to base our opinion upon the merits. *Page 231 
Defendant's pleas and exceptions were overruled by the lower Court, the case was tried on the merits and judgment rendered rejecting plaintiffs' demands, from which plaintiffs' prosecute this appeal.
There is no question of law involved in this matter, it being conceded by counsel for defendants that a lessor is liable for injuries to persons on leased premises, in instances where the injuries were caused by or resulted from a defective condition of the occupied premises, there being no knowledge of the defects or acts contributing to such accident and injury on the part of the injured party.
Plaintiffs have entirely failed to prove their case either by the character or degree of evidence which is required. As to the actual occurrence of the accident, there is no testimony of any eye witnesses, so far as is disclosed by the record. The father, Albert Burch, was not at home at the time, and, therefore, his testimony as to the actual circumstances surrounding the accident must be disregarded. The mother testifies of the accident in these words: "On the 15th of April she walked out on the porch and right next to the door steps one of the planks just crushed through with her and hurt both sides of her leg."
The above testimony does not indicate whether the mother actually saw the accident or not. The only testimony of the little girl bearing on the happening of the accident is as follows: "I fell through the floor and hurt my leg on both sides and was operated on."
The child was asked very few questions by counsel for plaintiff and there was no cross-examination, the trial Judge noting the reason as follows: "For the benefit of the upper Court I think we had better state that the witness is deaf and the questions were asked by the attorney and relayed to the witness by the witness' mother by lip movement."
Three lay witnesses were placed on the stand on behalf of the plaintiffs, but their testimony is completely valueless because of the fact that they had no first-hand knowledge of the accident, and their response to questions as to the condition of the porch flooring indicated that they had no real knowledge thereof.
It is evident from the record that plaintiffs were depending to considerable extent upon the testimony of the physicians who first treated the little girl after the alleged accident. Dr. J.T. Faith, a witness for plaintiffs, testified that he did not know whether he treated the child in 1942 or 1943, and that it seemed to him the treatment was in the summer or early fall.
The parents testified the child was taken to Dr. John T. Mosley for treatment the day after the accident, but Dr. Mosley, who appeared as a witness for defendant, testified that he had last seen the child as a patient some two or three years before the trial, which was had on February 23, 1944.
The defendant and one other witness testified that they repaired the porch of the house in question in 1941.
It is further significant that this suit was filed a short time after the Burch family had been put out of the premises by the defendant landlord on account of failure to pay rent.
All the testimony on behalf of plaintiffs is touched with such vagueness and uncertainty as to prevent its acceptance, particularly in the face of positive testimony to the contrary, as being sufficient to sustain a judgment.
Turning now to a consideration of the character of disabilities from which the child suffered, both of the medical witnesses who testified in the case, that is, Dr. Faith on behalf of plaintiffs, and Dr. Mosley on behalf of the defendant, are in complete agreement, a fact which is definitely worthy of note.
The child suffered from chronic osteomyelitis of the right leg, of several years duration, the condition having existed at least since the year 1935. The learned doctors testified that to their knowledge this chronic condition had flared up from time to time and that it would be utterly impossible for any physician to say whether or not one of these flare-ups was caused by a scratch or bruise *Page 232 
resulting from injury, or by a recurrence of the original injury, or resulting infection.
The record contains more than a hundred pages of photostatic copies, taken from the records of the Charity Hospital of Louisiana at New Orleans, which we have taken pains to examine and decipher.
These records show that the child had a history of a fall and fracture of the tibia of the right leg in 1934, being admitted and treated at the hospital in 1935. Since the original admission and diagnosis of osteomyelitis was made, she had been readmitted to the hospital a number of times in 1939, 1940, 1941 and 1942.
The history showed an operation at the hospital in February, 1941, "for an old chronic osteomyelitis of 8 years duration which had healed intermittently but later broke down again".
While it is true that these records show admission of the child to the hospital on June 8, 1942, at which time a history of chronic osteomyelitis was given, the record noting an injury to the leg and a fall some six weeks before admission, of course, this showing has no element of probative value with reference to the accident. The hospital records are of value only to the extent of establishing the chronic condition from which the child suffered over a period of some eight years or more, bearing out the opinion of the medical witnesses in the case as to the probabilities of intermittent recurrence of the acute condition necessitating treatment and hospitalization.
It is our opinion that plaintiffs have failed in discharging the burden of proof which necessitated the establishment of the accident and a resulting injury. They have further failed to satisfactorily connect the accident with any defect in the rented premises which would have fixed the liability of the landlord.
It is further evident to us, in view of the medical testimony, that no Court would be justified, even conceding the occurrence of an accident, in finding that an injury was the result of the accident and not due to an acute condition resulting from the chronic infection.
To so hold would necessitate an absolute disregard of the opinion of the medical witnesses hereinabove noted.
For the reasons assigned, the judgment appealed from is affirmed at appellant's cost.