McBRIDE, Judge.
Plaintiff appeals from a judgment dismissing his suit for $13,183.45 against his landlord and the latter’s insurer in solido for damages arising out of alleged defective premises. The action was brought under LSA-C.C. art. 2695 which reads:
“The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.”
Plaintiff occupied a furnished room at 3325 Coliseum Street as lessee of defendant Richardson. On May 27, 1957, the room caught fife and he claims to have been physically injured and that certain of his movable property was destroyed. Plaintiff charges, on information and belief, that the fire was started by the defective condition of the electrically operated air conditioning machine and the defective condition of the small electric refrigerator referred to as a “refrigerette”, and that the defective condition of both appliances was well known to the landlord who permitted said condition to exist even after he was notified thereof.
Defendants admit the fire; they allege upon information and belief it was due solely to the negligence of plaintiff himself and was not due to any faulty or improper equipment, nor was the fire due to any negligence on the part of the landlord. Alternatively, defendants plead that the proximate cause of the fire was the contributory negligence of plaintiff in that he smoked in bed in an exhausted physical condition and while under the influence of liquor.
At the outset counsel for plaintiff argued at length that the defendants had failed to sustain the burden of proving the special defense that plaintiff smoked in bed or was drunk, but we need not pay any consideration at all to the defense as it was set up in the alternative and alleged as facts to support the plea of contributory negligence which, in view of our conclusions, plays no part in the case.
Plaintiff after having been invited to a friend’s home and visiting several bars on the night of May 26, 1957, went to his room at about 3:30 o’clock the next morning. He testified he retired and about 6:20 a. m. was awakened by the fire. He states he endeavored to extinguish the blaze by beating it with a wet cloth receiving injuries for his efforts and barely escaping with his life. The fire was of such intensity that it consumed everything in the room.
The air conditioning unit and the re-frigerette are blamed. Plaintiff testified that the air conditioner sometimes stopped running and “you would have to hit it * * * to make it go on again.” The refrigerette ran “hot” according to some of the testimony and would make no ice cubes; it is said also that the plastic shell on the machine was cracked. It might be mentioned that the air conditioning unit had been in operation during plaintiff’s absence from Sunday morning around 11 o’clock to the time of the fire early on Monday morning.
Asked what caused the fire, plaintiff said:
“I don’t know; I don’t know if it was the air conditioner or the refrigerator.”
All he knew was that when awakened a fire was in the room in the vicinity of the air conditioner, the refrigerette and Venetian blinds on the window. He admitted he is “just guessing” when he makes the statement that the fire was caused by the two appliances.
No one was able to testify exactly what caused the fire and to say that defects in the air conditioner or the refrigerette were *295 the cause would be injecting unreasonable conjecture into the case.
Fontaine, an arson inspector for the New Orleans Fire Department who made an inspection at the behest of the District Fire Chief, concluded the fire had started not in the vicinity of the two appliances but in the bed.
Plaintiff produced as an expert witness Harold Levey, a consulting engineer in the electrical, mechanical and chemical fields. He did not know what was the cause of the fire; he made no inspection of the premises and while on the stand gave answers to certain hypothetical questions propounded by the attorney for plaintiff. Mr. Levey testified that if a 10 ampere fuse had been serving the refrigerator, the fuse would have blown, and if a 20 ampere fuse had been serving the air conditioning unit, that fuse would also have blown. The witness concluded from the fact that the fuses did not blow that fuses of “high capacity” had been used by the landlord to take care of the faulty electrical units that would have blown out a 10 or 20 ampere fuse. He stated 30 ampere or greater capacity fuses are often used for such purpose or by placing a penny under the fuse. Such a procedure, he said, prevents the fuse from blowing but places the electrical apparatus in a danger zone for fire. The use of fuses of a capacity of more than 30 amperes is prohibited by the Fire Prevention Bureau and the Board of Underwriters.
What the expert said might be perfectly' true, but his statements have no pertinency in the matter which concerns the court, i. e., what caused the fire. There is no evidence of any sort in the record showing what type or what capacity fuses were utilized or the fact that a fuse did or did not blow had anything to do with tire conflagration.
We, as did the trial judge, believe that the plaintiff has failed to prove that the fire and his ensuing damages were caused by any defects in the leased premises.
Learned counsel for the plaintiff argues strenuously that the burden of proof was upon the landlord in view of the special defenses to show what started the fire. But we do not think so. The defendants specifically deny that the fire was caused by any defect in the premises and this effectively threw upon the shoulders of plaintiff the burden of proving the cause.
Counsel for plaintiff cites us to Kelly v. During, 6 La.App. 91, decided by this court, wherein it was stated that according to existing jurisprudence a plaintiff is not bound to prove how the accident happened and whether the damage was caused by defective flooring, or- steps, or plastering, or heater, or electrical fixtures, the law is the same. This was a correct statement of the law and means that the claimant need not prove how the fire occurs, but there is nothing in the law which relieves him of showing what caused the fire. In the cited case the cause of the fire was shown but the plaintiff was not bound to prove how it happened. We said:
“The testimony leaves no doubt that the fire was caused by electric wires; ^ »
 There is nothing better settled in our jurisprudence than that to be entitled to a recovery one must make and establish his claim to a legal certainty and by a fair preponderance of the evidence. The landlord is not an insurer of his tenant, and the above rule applies with equal force when a tenant claims damages of the landlord for vices or defects in the leased premises.
On rehearing in the case of Dunn v. Tedesco, La.App., 93 So.2d 339, which involved a claim against a landlord for the death of a child, we said:
“Frankly, we do not know what caused the demise of the little girl, but we unhesitatingly stand firm in our conclusion that there is no evidence that a defect in the premises brought it about or was a contributing *296 cause. Hence, plaintiffs cannot be successful in their demands. They have not borne the burden of proving; their case by a preponderance of evidence. It was encumbent that they show that their child died because of vices or defects in the premises. See Burch v. Mathson, La.App., 26 So.2d 230; Dugas v. Mayer, La.App., 179 So. 607; Castain v. Lograco, La.App., 152 So. 153; Boudro v. United States Fidelity & Guaranty Co., La.App., 145 So. 294; Potter v. Soady Bldg. Co., Inc., La. App., 144 So. 183; Cosey v. Scott, 17 La.App. 680, 137 So. 361. The happening of the accident raises no presumption that the landlord was negligent or that he failed to keep his building in repair. Boudro v. United States Fidelity & Guaranty Co., supra.”
On certiorari in the same case the Supreme Court, 235 La. 679, 105 So.2d 264, 265, said:
“The instant suit is based on Articles 670 and 2322 of the Louisiana Civil Code, which place a duty on the owner of a building to keep his premises in repair and make him answerable for damage either occasioned by its ruin when caused by his neglect to repair it or resulting from a vice in its original construction. In order to succeed in this action these plaintiffs would have had to show by a preponderance of the evidence that the heater was defective and that its defects caused or contributed to their infant daughter’s death.
* * * * * *
“After a careful analysis of all the evidence and testimony, there is no conclusion that we can reach except that plaintiffs have not proven or established to our satisfaction by a preponderance of the evidence that a defect in the heater caused or contributed to the death of their child, and hence they cannot recover.”
We see no reason to disagree with the conclusion reached by the trial court.
Therefore, the judgment appealed from is affirmed.
Affirmed.