HOOD, Judge.
Plaintiff, Euelide Richard, instituted this suit to recover damages allegedly sustained by him as the result of a fire which destroyed the dwelling in which he resided. The suit was instituted against the liability insurer of Dr. B. A. Soileau, d/b/a Soileau’s Gin, in Ville Platte, Louisiana. Judgment on the merits was rendered by the trial court in favor of defendant, and plaintiff has appealed.
The fire which gave rise to this suit occurred about 9:45 p. m. on September 4, 1965. At that time plaintiff and his wife were living in a residence building located near a cotton gin, know as Soileau’s Gin, in Ville Platte. The building was owned by the defendant’s insured, Dr. B. A. Soileau, and was being rented by plaintiff from the owner. The dwelling and all of its contents were completely destroyed by the fire, and in this suit plaintiff seeks to recover the value of his furniture, clothing and personal belongings which were burned in that fire.
Dr. Soileau owned and operated Soileau’s Gin. As a part of this establishment he also owned and operated an incinerator which was used to burn and dispose of refuse from the gin, consisting principally of cotton seed hulls, lint and cotton molt. This incinerator was constructed of corrugated sheet metal, supported by steel posts. It was about eight feet in diameter and it extended from the ground to a height of about 30 feet in the air. It was located 70 or 80 feet east of the main portion of the cotton gin, and it was connected to the gin by two pipes or ducts, through which ducts refuse from the gin was blown into the incinerator to be burned.
A fire was maintained in the incinerator while the gin was in operation, and the incinerator was covered with a one-quarter or one-half inch mesh screen, constructed of metal, to prevent burning embers from blowing out the top. Some of the sheet metal forming the sides or walls of the incinerator had rusted out in a few places near the ground, leaving cracks through which burning embers sometimes escaped and fell to the ground just outside the incinerator. In order to eliminate the spreading of fire, the owner of the gin installed a water hydrant and hose near the incinerator, and employees of the gin used these water facilities to put out the small fires which occasionally occurred outside of and near the base of the incinerator because of escaping embers.
In spite of the screen which covered the top of the incinerator very small sparks or burning embers frequently escaped from or were blown out the top and were carried short distances through the air by the wind. The evidence establishes, however, that these small sparks or embers went out or quit burning by the time they reached points a very few feet from the burner. Larger masses of burning refuse frequently escaped from the lower portion of the incinerator through cracks in its walls. Sometimes these were blown a few inches or a few feet from the base of the burner by the wind. Occasionally these larger embers started small grass fires near the incinerator but they were extinguished promptly by employees of the gin.
*440 A number of dwellings were located close to this incinerator, one of which was about IS or 20 feet south of it. Several residences were located less than 100 feet east of it. The residence building in which plaintiff lived and which was destroyed by fire was located north of it. The house faced in a northerly direction and the south or rear wall of the building was 120 feet north of the incinerator. No structures were located between the burner and plaintiff’s home. There had been no fires in residence buildings in that vicinity for at least 20 years prior to the date on which plaintiff’s hom.e was burned.
The cotton gin had experienced a breakdown during the late afternoon of September 4, 1965. Ginning operations and the burning of refuse in the incinerator were discontinued from that time until the repairs could be made. The repairs were completed shortly after 9:00 p. m. that evening and the gin resumed operations about IS minutes before the fire in plaintiff’s home was discovered. The incinerator also was put back into operation when the gin was started, about 15 minutes before the fire in plaintiff’s residence was detected.
At the time this fire occurred a moderate wind was blowing from south to north, that is from the direction of the incinerator toward plaintiff’s home. No one was in plaintiff’s home at the time the fire started. Mrs. Richard had been away from home since early that afternoon, and plaintiff had been out of the house for about three hours before the fire was noticed.
A member of the Ville Platte Fire Department was in the immediate vicinity of plaintiff’s home 15 or 20 minutes before the fire was discovered, and at that time he,did not notice that the house was afire. This indicates that the fire started only a few minutes before it was discovered and that it spread rapidly. All of the doors and windows of the house were closed when the fire started, with the possible exception of a small opening in one bathroom window, and there were screens on all of the windows. It is apparent, therefore, that burning embers could not be blown inside the house. The main portion of the house was covered with a tin roof which would not burn. The front porch on the north side of the building, being the side which was the greatest distance from the incinerator, was covered with a composition roof which would burn.
A number of witnesses who went to plaintiff’s home shortly after the fire was discovered testified that the blaze originated inside the house, indicating that the fire could not have been caused by sparks or burning embers from the incinerator. Lee Reed, a welder who had assisted in repairing the cotton gin that evening, was one of the first persons to arrive at plaintiff’s home after the fire was discovered. He testified that when he arrived the fire was confined to the inside of a room in the northwest portion of the house, that being the portion of the house which was the greatest distance from the incinerator. After calling the Fire Department, he returned and attempted to enter the house through the back door to see if anyone was inside, but finding the door closed and locked he had to break it down to get in the house. Wade Hampton Reed, Jr., the Fire Chief in Ville Platte, arrived at the scene shortly after the fire was reported, and he found that only the front of the building was on fire. He had received considerable training in fire fighting, and on the basis of that training, his experience and an investigation which he made of the house after the loss, he concluded that the fire originated inside the building and that it could not have been caused by sparks or embers from the incinerator. Unell Deville, another fireman, found that the fire was more intense in the northwest section of the house. Dr. Soileau, who arrived shortly after the alarm was sounded, stated that the fire started in the northwest bedroom of the house. And, Ebrard Fontenot, an employee of the gin who arrived at the scene early, stated, “I saw *441 fire was in the front room * * * It was inside, I didn’t see fire outside.”
Plaintiff contends that he has shown a causal connection between the burning of refuse in the incinerator and the burning of plaintiff’s home and belongings. He argues that the evidence eliminates any conceivable cause of the fire, other than that it was caused by sparks or burning embers from the incinerator. He contends that the testimonies of the fire chief and others who stated that the fire originated inside the house were merely expressions of opinions by those witnesses, and that their opinions should not prevail over the positive evidence which was produced.
The trial judge did not hold specifically that the fire originated inside the house. However, in his reasons for judgment he did review the testimony of the fire chief to that effect, and he then concluded that plaintiff had failed to carry the burden of proof which rested upon him. We think it is apparent from his reasons for judgment that the trial judge attached some weight to the testimony of the fire chief, and that he was not convinced that there was a causal connection between the burning of refuse in the incinerator and the fire which destroyed plaintiff’s home. We have examined all of the evidence, and we also conclude that plaintiff has failed to establish that the destruction of his home and belongings was caused by sparks or embers emanating from the incinerator.
It is fundamental that negligence is not actionable unless it is a proximate cause or a cause in fact of the harm for which recovery is sought. To be actionable, the negligence must have been a substantial factor in bringing about that harm. The burden of proving this causal link is upon the plaintiff. Without causal connection between the negligent act and the accident no legal liability exists. Johnson v. Johnson, 171 So.2d 710 (La.App. 4th Cir. 1965) ; Lawson v. Continental Southern Lines, Inc., 176 So.2d 220 (La.App. 2d Cir. 1965); Davilla v. Richardson, 120 So.2d 293 (La. App. Orl.Cir. 1960, Cert. denied); and Perkins v. Texas and New Orleans Railroad Company, 243 La. 829, 147 So.2d 646 (1962).
In the instant suit we agree with the trial judge that plaintiff has failed to establish a causal connection between the fire which destroyed plaintiff’s home, on the one hand, and the alleged negligent acts of defendant’s insured, or his agents or employees, on the other. Defendant, therefore, is not liable for the damages claimed by plaintiff.
For the reasons herein set out the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.